UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MOMS FOR LIBERTY – BREVARD COUNTY, FL, | Case No. 6:21-cv-01849 |
| AMY KNEESSY, | |
| ASHLEY HALL, | |
| KATIE DELANEY, | |
| and | COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF |
| JOSEPH CHOLEWA, | |
| *Plaintiffs*, | |
| v. | |
| BREVARD PUBLIC SCHOOLS, | |
| MISTY HAGGARD-BELFORD, Chair, Brevard County School Board, in her official and individual capacities, | |
| MATT SUSIN, Vice Chair, Brevard County School Board, in his official and individual capacities, | |
| CHERYL McDOUGALL, Member, Brevard County School Board, in her official and individual capacities, | |
| KATYE CAMPBELL, Member, Brevard County School Board, in her official and individual capacities, | |

- 1 -

and

JENNIFER JENKINS, Member,
Brevard County School Board, in her
official and individual capacities,

     *Defendants.*

## INTRODUCTION

Brevard County's public schools doubtless teach students that the U.S. Constitution protects their freedom of speech and their right to petition the government for redress of grievances. But Brevard's school board operates its meetings as if these rights do not exist.

State law allows individuals to speak at school board meetings on matters of public concern related to the school district. Indeed, the public is concerned about several issues involving Brevard public schools, including controversial topics such as the school system's COVID response policies and the role, if any, that identity politics plays in school curriculum and general operation.

This lawsuit does not try to resolve these issues. Rather, Plaintiffs object to the unlawful restrictions that Brevard's school board places on First Amendment rights. The school board restricts what people can say and to whom they can say it, and discriminates against viewpoints critical of the board. The school board's policies unconstitutionally chill the speech of some

and unlawfully control the content of others, discriminating on the basis of viewpoint.

Defendant school board member Jennifer Jenkins summed up the board's dismissive attitude towards the discussion of opposing views: "[E]nough is enough. We shouldn't be talking about [masks] anymore. I'm going to say it again. We, as an organization, shouldn't be talking about this anymore." Brevard Public Schools, Feb. 9, 2021 Board Meeting video, https://bit.ly/3vjeQpP, Item E at 1:25:50 (last visited November 2, 2021). Jenkins simply does not believe that individuals speaking at board meetings should be able to express whatever she deems heretical. "I personally believe we should not be allowing the spread of disinformation. So, when we come to a public comment and we continue to make points that masks are not effective, my response will be, we shouldn't be talking about this anymore." *Id.*

Adding insult to this First Amendment injury, Jenkins also retaliated against Plaintiffs' lawful speech by engaging in a national media campaign falsely accusing them of unlawful violence and intimidation, painting herself as the victim of bullying by the people she silences. To be sure, *many* people in this populous county are aggrieved, justifiably or not, by the school board. Some of them, unfortunately, may express their views in an unlawful or inappropriate manner. But Plaintiffs are effective precisely because they

adhere to a code of conduct that stresses civility, and express themselves within the confines of the law, as they are doing with this lawsuit.

Instead of smearing their political opponents, Defendants should respect Plaintiffs' First Amendment rights to speech and petition at school board meetings. And the Court should ensure they do by providing Plaintiffs' requested relief.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1346, as this action challenges Defendants' violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983.

2.  Venue lies in this Court per 28 U.S.C. §§ 1391(b)(1) ("a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located") and (b)(2) (the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

## THE PARTIES

3.  Plaintiff Moms for Liberty - Brevard County, FL ("M4L") is the Brevard County Chapter of Moms for Liberty, a 501(c)(4) organization whose mission is to organize, educate and empower parents to defend their parental rights at all levels of government.

4.  Plaintiff Amy Kneessy is a natural person and a citizen of Florida and the United States, residing in Brevard County, Florida. Kneessy is a member of M4L.

5.  Plaintiff Ashley Hall is a natural person and a citizen of Florida and the United States, residing in Brevard County, Florida. She is also the mother of a school-aged child that attends a school operated by Brevard Public Schools. Hall is Chair of M4L.

6.  Plaintiff Katie Delaney is a natural person and a citizen of Florida and the United States, residing in Brevard County, Florida. She is also the mother of school-aged children that attend a charter school in Brevard County. Delaney is a member of M4L.

7.  Plaintiff Joseph Cholewa is a natural person and citizen of Florida and the United States, residing in Brevard County, Florida. He is also the father of school-aged children that attend schools operated by Brevard Public Schools. Cholewa is a member of M4L.

8.  Defendant Brevard Public Schools ("BPS") is a school district that operates the public schools of Brevard County, Florida. BPS is managed by an elected five-member board.

9.  Defendant Misty Haggard-Belford is the Chair of the Brevard County School Board. She is sued in her official and individual capacities.

10.   Defendant Matt Susin is the Vice Chair of the Brevard County School Board. He is sued in his official and individual capacities.

11.   Defendant Cheryl McDougall is a member of the Brevard County School Board. She is sued in her official and individual capacities.

12.   Defendant Katye Campbell is a member of the Brevard County School Board. She is sued in her official and individual capacities.

13.   Defendant Jennifer Jenkins is a member of the Brevard County School Board. She is sued in her official and individual capacities.

FACTS

*The Board's Public Participation Policy*

14.   Florida law states: "Members of the public shall be given a reasonable opportunity to be heard on a proposition before a board or commission." § 286.0114(2), Fla. Stat. (2013).

15.   Brevard County School Board (the "Board") policy states: "Members of the public shall be given a reasonable opportunity to be heard on a proposition before the Board." Public Participation at Board Meetings, Brevard Sch. Bd. Policy Manual § 0000 Bylaws, Code po0169.1 (2014) (the "Public Participation Policy").

16.   "[A] proposition is an item before the Board for a vote, and includes, but is not necessarily limited to, all items on the agenda noted as unfinished

- 6 -

business, consent, and nonconsent. A proposition may also include a vote on a motion to rescind or to amend action previously taken but does not generally include items on the special order agenda. A proposition does not include items wherever found on the agenda upon which the Board votes in its quasi-judicial capacity." Public Participation Policy.

17.   Individuals must register to participate in the public comment portion of a Board meeting and indicate "support, opposition, or neutrality on [the] proposition" he or she will discuss. Public Participation Policy. Speakers are recognized to speak by the Board Chair "in the order in which the requests were received." *Id*. Individuals recognized by the Chair are allotted three minutes of speaking time, but the Chair has discretion to extend that time. *See id*.

18.   All speakers must direct their comments "to the presiding officer; no person may address or question Board members individually." Public Participation Policy.

19.   Under the Public Participation Policy, the Board Chair may:

1.   Interrupt, warn, or terminate a participant's statement when the statement is too lengthy, personally directed, abusive, obscene, or irrelevant;

2.   Request any individual to leave the meeting when that person does not observe reasonable decorum;

3.  Request the assistance of law enforcement officers in the removal of a disorderly person when that person's conduct interferes with the orderly progress of the meeting;

4.  Call for a recess or an adjournment to another time when the lack of public decorum so interferes with the orderly conduct of the meeting as to warrant such action.

*Moms for Liberty*

20.   Commitment to civility is central to M4L and its members. Plaintiffs do not engage in or condone any threatening words or behavior, or violence.

21.   Moreover, Plaintiffs believe that they can be most effective in gaining support for their policies, and making a positive impact on their community, by being "joyful warriors"—advocating for their views in a positive, respectful, and peaceful manner, rising above the scorn and intolerance of some who disagree with them.

22.   Prior to every BPS school board meeting, M4L reiterates to its members the group's commitment to civil discourse. For example, prior to the March 9, 2021 BPS board meeting, at which BPS's gender identity policies were discussed, Hall posted the following message to M4L's Facebook page:

A few crucial reminders…

1) There is an entire contingent of people who have already labeled anyone who has concerns about this policy as hateful. Please do not allow your behavior or speech to feed into that false narrative. We must show the concern and compassion that we have for all kids. Your example will either lead people to listen to or reject our messages so act accordingly.

2) . . . [M]asks are required. Last month the staff was openly hostile toward me. No matter how they respond to you, be kind and courteous. We must be the bigger people and give them no reason to silence us.

3) Choose your words carefully. These meetings are public and if you speak you will be filmed and people can clip and distort what you say. Do NOT let this keep you from speaking out if you have concerns but be aware and act accordingly.

4) If you can follow steps 1-3 wear navy blue to show solidarity with our side. If you plan to act a fool and embarrass the rest of us wear red, purple, or pink for all I care. If you are with any organization remember you are a reflection on them not just yourself.

*Defendants' unlawful censorship at school board meetings*

23.   Defendants' unlawful censorship and viewpoint discrimination at Board meetings primarily take three forms. *First*, Defendants censor any criticism of people or policies, or particular words or terms which they dislike. *Second*, Defendants selectively apply the Public Participation Policy's facially unconstitutional directive against addressing board members or making "personally directed" comments to bar mentioning individuals by name, a significant burden on addressing or criticizing government officials or their views. *Third*, on at least one occasion, Defendants provided preferential access to a board meeting to people aligned with the Board's views on a BPS

policy and consequently limited the access of some individuals with views that diverged from the Board.

24. At the February 23, 2021 Board meeting, Defendant Haggard-Belford allowed a student to directly address Defendant Jenkins in discussing student access to schools for theatrical production rehearsals. Brevard Public Schools, Feb. 23, 2021 Board Meeting video, https://bit.ly/3ayunrX, Item E at 19:03 (last visited November 2, 2021). But when Plaintiff Hall spoke, she was treated differently. Hall began by criticizing the Board for issuing a mask directive prior to the meeting that effectively barred a 9-year-old boy from addressing the board as he had planned. She then attempted to compliment Defendant Susin for allowing a debate about singing at school. But Hall was only able to say, "Mr. Susin I wanted to thank you personally," before Defendant Haggard-Belford interrupted her, stating "Ashley, I'm going to ask you just to not focus…. I'm stopping so I'm not using your time when I say this. I'm just going to ask you not to focus on individual board members, and keep it focused on the chair of the board as the whole." *Id.* at 23:00-23:40.

25. On March 9, 2021, several pro-LGBTQ activists, some from outside Brevard County, were escorted into the school board meeting while Brevard residents who had arrived earlier and were waiting for the room to open, including M4L members, were excluded from the meeting. Law enforcement officials were positioned at the meeting room doors to keep these community

- 10 -

members with disfavored views from attending the meeting while the activists with viewpoints favorable to the Board's policies were admitted.

26.    Plaintiff Joseph Cholewa tried to attend the March 9, 2021 meeting. But because of the preferential treatment the pro-LGBTQ activists received, the meeting reached its attendance capacity before he entered the meeting room. Accordingly, Plaintiff Cholewa was denied an opportunity to address the Board to offer views differing from those of the activists.

27.    At the March 9, 2021 meeting, several pro-LGBTQ activists were allowed to gesture at and speak directly to Defendants and audience members without interruption. Brevard Public Schools, March 9, 2021 Board Meeting video, https://bit.ly/3p1I8YO, Item E, Part 1 of 2 at 18:47-18:52; Part 2 of 2 at 2:59-3:07; 7:27-7:37; 8:32-8:44; 10:48-10:56; 27:15-27:19 (last visited November 2, 2021).

28.    At the same meeting, a speaker tried to explain that she felt unsafe because some attendees had called her "a bitch, a whore, a prostitute." Defendant Haggard-Belford interrupted her and warned, "I can't allow you to say those words in here, okay? I need you to make sure you keep it clean." *Id*. Part 2 of 2 at 1:40:12-1:40:33.

29.    At the same March 9, 2021, Board meeting, Defendant Haggard-Belford silenced a speaker (not a M4L member) with views that diverged from the activists:

| | |
|---|---|
| Public Speaker: | If you have students who do not know for sure if they are a boy or a girl please let me help you in knowing that God created us with one or the other chromosome which makes us male or female. For the liberal left who seem to rely so heavily on science… |
| Haggard-Belford: | So ma'am I'm going to interrupt you . . . but we're not going to do name calling okay from anyone who's speaking tonight. |
| Public Speaker: | I'm not insulting anyone. I'm stating a fact. |
| Haggard-Belford: | You're referring to "liberal left" let's just talk issue and move forward please. |

Brevard Public Schools, March 9, 2021 Board Meeting video, https://bit.ly/

3p1I8YO, Item E, Part 1 of 2 at 10:03-10:46 (last visited November 2, 2021).

30.  At the same March 9, 2021 meeting, another individual (not a M4L

member) spoke against the Board's transgender bathroom policy and turned

to the pro-LGBTQ activists in the audience at the beginning of his remarks to

say, "I'm not against y'all at all. Be loved. Use your pronouns. That's all fine

and well. I'm glad." Defendant Haggard-Belford interrupted and rebuked him

for directing his comments to the audience.  *Id.* at Item E, Part 2 of 2 at

0:14:48-0:15:09.

31.  At the March 23, 2021 meeting, when a non-M4L member that goes

by the name "Thomas Jefferson" referred to Defendant Jenkins, Haggard-

Belford immediately silenced him in the following exchange:

| | |
|---|---|
| "Jefferson": | First I'd like to start by sharing my deep disappointment with our elected school board's officials and how they orchestrated the last school |

|   | board meeting. Our local Brevard County residents consisting of Christian patriots came to speak at the meeting at four o'clock to secure a chance to speak and attend the meeting, well before the LGBTQ nations showed up. Many of them not even residents of Brevard County at which time school board official Jenny Jenkins came out… |
|---|---|
| Haggard-Belford: | Sir, I'm gonna stop your time so I'm not taking away your time.  Okay?  I'm just going to remind you of the expectation that comments be directed to the Board Chair as opposed to personally directed at any board members or audience. Okay? |

Brevard Public Schools, March 23, 2021 Meeting Public Comment,

https://bit.ly/3oT6DY4, Item E, Part 2 of 2 at 0:13:36-0:14:18 (last visited

November 2, 2021).

32. "Jefferson" continued:

|   |   |
|---|---|
| "Jefferson": | [Jenkins] came out and privately escorted the whole group of LGBTQ inside the building and then shut the doors and placed sheriffs at the doors to keep us out. [The Covid restrictions that limited attendance at the meeting] was a simple ploy to silence our opposition to this evil LGBTQ agenda. |
| Haggard-Belford: | Make sure that it's not personally directed. We're not name calling. We're not pointing out groups. |
| "Jefferson": |  Is there a problem with the word "evil?" |
| Haggard-Belford: | Yes sir. You are calling a group of people evil and the policy evil. |

Id. at 0:14:25-0:15:16.

33.   When "Jefferson" finished, Defendant Jenkins interrupted the public comment period, "I am concerned that we are allowing comments that our students can hear—and are probably watching from home—that are calling them sinners. I just want to throw that out there." *Id.* at 17:00-17:09.

34.   At the April 13, 2021 meeting, a student who was complaining about not being allowed to speak began her comment, "Jennifer Jenkins personally showed up to my school," but was interrupted by Haggard-Belford who interjected, "So hold on just one second everything needs to be directed to me and not calling out any individual board members for me if you would. Okay? Thank you so much." Brevard Public Schools, April 13, 2021 Meeting Public Comment, https://bit.ly/3jBdUs0, Item E10 at 29:27-29:37 (last visited November 2, 2021). The student continued her criticism of Defendant Jenkins, but could only refer to Jenkins as "one board member," "this specific board member," and "this board member," while referring to other Defendants as "a few school board members." *Id.* at 29:41-30:48.

35.   At the April 27, 2021 meeting, a different speaker was allowed to address and mention individual board members, in a friendly manner, and was not stopped or reprimanded:

> Thank you madam chair, Coach Susin and everybody else . . . . I think I've emailed probably not Ms. Jenkins but everybody else . . . First of all Ms. McDougall think about the food people . . . .

Brevard Public Schools, April 27, 2021 Meeting Public Comment,

https://bit.ly/3pVknSP, Item E9 at 4:01-4:21 (last visited November 2, 2021).

36. The speaker acknowledged that he was breaking the rules, "Now I

know I'm not supposed to address you. I'm sorry," *id*. at 4:36-4:39, but

continued breaking them without interruption. "I know the first thing that

Mr. Susin does he always goes into the kitchen wherever he visits the

schools." *Id*. at 4:42-4:47. He then addressed Superintendent Mullins and,

while gesturing and pointing to Defendant board members, told a story which

repeatedly mentioned Dr. Mullins as the Board chuckled. *Id*. at 4:49-7:25.

37. At the May 11, 2021 meeting, a speaker referenced two school district

coaches who had been terminated, and she asked that they be reinstated.

Brevard Public Schools, May 11, 2021 Meeting Public Comment, https://bit.ly/

3oXYO39, Item E Part 2 of 2 at 8:45-8:50 (last visited November 2, 2021). She

was then interrupted by Haggard-Belford who stated "I'm going to stop you

for just a second. Okay? I need for you to not mention names. Okay, because

you're putting their information out there in the public and it's not yours to

share." *Id*. at 8:50-8:59. Another speaker mentioned the same employees by

name and Haggard-Belford responded, "Sir please not the names." *Id*. at

14:35-14:41. This speaker did mention two individuals who worked at the

school and was not interrupted. *Id*. at 12:45-12:50; 13:00-13:10.

38.  At the May 11, 2021 meeting, "Jefferson" spoke to complain about the Board's viewpoint "discrimination, bias, and cancel culture and blatant attempts to cancel our free speech." He explained that some LGBTQ activists told his child to "go to hell." Defendant Haggard-Belford interrupted him and said, "Sir, please keep it clean." He explained that when his son responded in-kind, the boy was ejected from the meeting. *Id.* at 1:04:55-1:05:16 (last visited November 2, 2021).

39.  When Plaintiff Cholewa attempted to make his remarks at the May 21, 2021 meeting, he was interrupted when he gestured with an open hand toward the Board and was told that he could not make personally directed statements. Brevard Public Schools, May 21, 2021 Meeting Public Comment, https://bit.ly/3oVXVIF, Item E6 at 22:18-22:31 (last visited November 2, 2021).

40.  Cholewa voiced his concern that Defendants are unresponsive and appear disconnected from the community, in part by criticizing the plexiglass barrier erected in front of the speaker's podium. He was interrupted and cut off for addressing board members with his concern:

> Cholewa:    [T]he problem with Covid is that majority for us it's the politics behind Covid has affected us more than the actual virus and as elected officials we hoped that you're gonna step up and weed out the politics and figure out what it is that we need for our children. Because there is that big sign behind you that says "Every Student With Excellence." But the problem is

|                      |                                                                                                                                                                                                                                                                                   |
|----------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                      | that I don't see you serving it because the data says the masks affect children negatively from a social, emotional, intellectual, physical, all these things that impact them negatively but nobody listened . . . How am I supposed to stand up for District Two while I watched you behind a plastic prison? |
| Susin:               | You gotta cut him off. Don't call out one of our school board members.                                                                                                                                                                                                             |
| Haggard-Belford:     | Yeah.                                                                                                                                                                                                                                                                              |
| Cholewa:             | I didn't call out anybody.                                                                                                                                                                                                                                                         |
| Haggard-Belford:     | Keep it directed to me please.                                                                                                                                                                                                                                                     |
| Susin:               | Sir, we've got a motion on the floor and there's a majority support for exactly what you're saying.                                                                                                                                                                                |
| Cholewa:             | I can't point out that she sat behind a piece of plastic?                                                                                                                                                                                                                          |
| Susin:               | I'm just saying that the enthusiasm is well respected but at the same time…                                                                                                                                                                                                        |
| Cholewa:             | This is my representative.                                                                                                                                                                                                                                                         |
| Haggard-Belford:     | Sir, the rules that I read at the beginning…                                                                                                                                                                                                                                       |
| Cholewa:             | Stop the clock if you're going to interrupt me.                                                                                                                                                                                                                                    |
| Haggard-Belford:     | The rules that I read at the beginning indicate that comments should be directed to me and about the issue and not directed to individual board members. So that is very clear in the beginning.                                                                                   |
| Cholewa:             | So I can't talk about my representative from my district?                                                                                                                                                                                                                          |
| Haggard-Belford:     | No you cannot.                                                                                                                                                                                                                                                                     |
| Cholewa:             | Okay.                                                                                                                                                                                                                                                                              |
| Haggard-Belford:     | Would you like me to resume the clock?                                                                                                                                                                                                                                             |

| Cholewa: | Yeah and give me more time. You just wasted ten seconds. |
| Haggard-Belford: | That's because you opted not to follow the rules. |
| Cholewa: | I can't hear you because I'm talking and you have masks on your face. |
| Haggard-Belford: | Your clock's gone. |

However, Haggard-Belford indicated that if Cholewa was prepared to follow the Public Participation Policy she would let him complete his remarks. Cholewa agreed and finished his statement. *Id.* at 21:42-23:16.

41.  At the July 13, 2021 meeting, Defendant Haggard-Belford allowed seven speakers make complimentary statements directedly to board members. None of these speakers were interrupted or admonished for their personally directed comments. Most mentioned Superintendent Mullins, though some mentioned other school district officials. Brevard Public Schools, July 13, 2021 meeting, https://bit.ly/3BGafQP, Item E at 5:03:5:39, 10:24-10:39; 21:14-21:23; 24:42-24:48; 28:11-28:18; 30:39-30:41; and 33:36-33:49 (last visited November 2, 2021).

42.  At the August 10, 2021 school board meeting, Defendant Haggard-Belford adopted the practice of opening every Board meeting by threatening all attendees with criminal sanctions for disruption. She now regularly cites § 877.13, Fla. Stat., and explains that disrupting a school board meeting is a misdemeanor punishable with 60 days in jail and a $500 fine.

43.   At the September 21, 2021 meeting, Plaintiff Cholewa sought to express his belief that the mandatory masking of school children infringed upon individual liberty, along the lines of other concepts allegedly endorsed by the Democratic Party that he finds offensive. But Haggard-Belford would not allow him to offer his viewpoints. When Cholewa alleged that the Democratic Party "says babies, white babies are born racist and oppressive," Haggard-Belford cut him off: "Joey, you're pushing the limit. Please be respectful. Okay?" Brevard Public Schools, September 21, 2021 Meeting, https://bit.ly/3aEvDd2, Item E at 1:05:08-1:06:30 (last visited November 2, 2021). Apparently, there is a "limit" to criticism that can be levied against a political party.

44.   When Cholewa criticized parents who administer hormone blocking drugs to small children in the process of transitioning their gender, Haggard-Belford again interrupted, and began speaking over him: "Joey, enough. Enough. Enough. Please stop. You are insulting half of our audience . . . I'm asking you to be respectful of people who view things differently." Cholewa retorted with "Grow up," "I don't care what you think," and "I am not anything inappropriate" as Haggard-Belford spoke over him. *Id.* at 1:06:48-1:07:25. Apparently, criticizing "people who view things differently" is "insulting" and cannot be allowed at board meetings.

45.  When Haggard-Belford's interruption of Cholewa led to criticism from the audience, she threatened to clear the room, and then again admonished Cholewa that he must "be respectful of people who view things differently." *Id.* at 1:07:10-1:07:25.

46.  With one minute and fifteen seconds left on his time, Cholewa was able to speak only for an additional 18 seconds before Haggard-Belford ejected him from the room, for making these comments:

> You want to silence people. You don't want to hear the truth. And it's going to come out. I will fight you. I will be here every weekend and I'll be yelling at you and screaming at you and telling you things that you don't want to hear. Guess why? This is America. I know you don't like freedom. I know you don't like liberty. I know you don't like the Constitution. Guess what? I'm going to keep talking.

Immediately after Cholewa stated that the board doesn't like the Constitution, Haggard-Belford ordered, "Alright, you're done. Leave please. Have a good night." *Id.* at 1:07:32-1:07:55. Cholewa said "yelling" and "screaming" in a sardonic manner, as he was plainly neither yelling nor screaming, but criticizing in a conversational tone what he believed to be excessive control of his speech.

47.  Defendants censored a M4L member at the October 26, 2021 meeting when she began discussing inappropriate books being promoted and available at Brevard elementary schools. She read an excerpt from a book on a second grade reading list but was rebuked by Defendant Haggard-Belford:

| | |
|---|---|
| M4L Member: | [quoting from the book] I tiptoed toward the door peering through the window at the boy's pants around his ankles squeezed between April's straddled legs as she lay on the teacher's desk. I swung the door open letting the soft light from the hallway shine a spotlight on them. "Shit" he muttered pulling up his pants. |
| Haggard-Belford: | Ma'am I need for you to keep your language clean. Okay? |
| M4L Member: | Oh. This was our schoolbooks. |
| Haggard-Belford: | Yeah, I understand but at this meeting I need for you to not… |
| M4L Member: | Well then you get my point. You get my point right? You get my point? These books are in our school. Are you going to keep me muted? Because I would like my time back that you muted me for then. These books are in our schools that is my point that is just one of them. |

Brevard Public Schools, October 26, 2021 Public Comment, https:// bit.ly/ 2ZsO2YF, Item E10 at 50:00-50:34 (last visited November 2, 2021).

48.  Later, at the October 26, 2021 meeting, a person spoke directly to Defendant Jenkins multiple times, offered praise to the Board and Jenkins, and complained about the Board's critics without interruption. The woman concluded her statement as her speaking time expired. Defendant Haggard-Belford praised the woman for her remarks by stating, "Thank you ma'am. We appreciate you joining us this evening. Your time is *unfortunately* up." *Id.* at 53:34-56:42 (emphasis added). Plaintiffs are unaware of an instance when

Haggard-Belford stated it was unfortunate that the speaking time of a Board critic had expired.

*The continuing impact of Defendants' censorship of Plaintiffs' speech.*

49.   Plaintiffs Hall, Cholewa, and Delaney continue to speak regularly at Board meetings and express their views, regardless of Defendants' disapproval. But the threat of criminal sanctions from Defendant Haggard-Belford, and the burdens imposed on them by the Public Participation Policy and its proposed amendments, chill Plaintiffs' speech, impact the content of their speech, suppress the viewpoints they want to express, and diminish their willingness to participate at Board meetings. Plaintiffs may at times test the limits of Defendants' speech restrictions, but the restrictions' presence chills their expression.

50.   Plaintiff Kneessy, herself a former member of the school board, has stopped speaking at Board meetings. She desires to discuss her viewpoints. But she does not feel free to do so given Defendants' viewpoint discrimination and censorship, backed by the Public Participation Policy's prohibitions and Defendants' threats of criminal prosecution.

COUNT ONE
RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
FACIAL CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

51.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 50.

52.   The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The government may not silence speech because it criticizes government officials or employees, or their favorite ideas or initiatives, even if that speech does so in ways that many people may find unpleasant. Allegations of hurt feelings, real or specious, do not justify censorship of public speech.

53.   First Amendment protections extend to public speech at school board meetings, by operation of the Fourteenth Amendment.

54.   "[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1985) (citation omitted). A limited public forum exists where a government has reserved a forum for certain groups or for the discussion of certain topics. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Ath. Ass'n*, 942 F.3d 1215, 1237 (11th Cir. 2019).

55. A school board meeting at which the public is allowed to speak is a designated public forum limited to discussing school operation and

governance. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 & n.7 (1983); *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir. 2017). The public comment period at BPS school board meetings is a limited public forum for Brevard County residents and taxpayers to discuss matters of public concern related to the school district.

56.   Content restrictions on speech are "permitted in a limited public forum if [they are] viewpoint neutral and reasonable in light of the forum's purpose." *Barrett*, 872 F.3d at 1225.

57.   "Although a limited public forum may rightly limit speech at the forum to only certain content, the First Amendment does not tolerate viewpoint-based discrimination against speech within the scope of the forum's subject matter. Viewpoint discrimination occurs when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id*. at 1225 n.10 (internal quotation marks and citations omitted).

58.   It is axiomatic that criticism of school officials, school employees, school policies, rules, and regulations, school budgets, and school curricula are germane to the business of school boards—regardless of whether school board members want to hear such criticism or believe that it is fair. The First Amendment prohibits the exclusion of these viewpoints from public speech at Board meetings.

59.   The Public Participation Policy's prohibition on personally addressing school board members; and on speech deemed "personally directed" or "abusive," violate the First Amendment right of free speech on its face by impermissibly discriminating against speech on the basis of viewpoint. These prohibitions are not designed to confine the forum to the limited and legitimate purposes for which it was created. Rather, the Policy suppresses ideologies, views, and opinions respecting matters properly before the Board with which Defendants disagree.

60.   By enforcing the Public Participation Policy, Defendants, under color of law, deprive Plaintiffs of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT TWO
RIGHT OF FREE SPEECH
RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

61.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 60.

62. All of Plaintiffs' public speech at Board meetings is fully protected by the Free Speech Clause of the First Amendment.

63. At no point did Defendants terminate or censor Plaintiffs' speech on the basis of time or irrelevance to the forum or lack of decorum. Rather, Defendants censored Plaintiffs' speech because they disagreed with it.

64. As-applied against Plaintiffs, the Public Participation Policy's prohibition on personally addressing school board members; and of speech deemed "personally directed," "obscene," or "abusive," violated and continue to violate Plaintiffs' First Amendment right of free speech by impermissibly discriminating against their speech on the basis of its viewpoint.

65. As applied against Plaintiffs, the Public Participation Policy's prohibitions on personally addressing school board members and on "personally directed" comments also violate Plaintiffs' First Amendment rights because these prohibitions are not reasonable in light of the public comment period's purpose. Discussion of matters germane to the schools' operations will necessarily require referencing individuals—especially members of the school board.

66. By enforcing the Public Participation Policy against Plaintiffs, Defendants, under color of law, deprived and continue to deprive Plaintiffs of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are damaged in

violation of 42 U.S.C. § 1983, and, therefore, are entitled to nominal damages, declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT THREE
RIGHT TO PETITION, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
FACIAL CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

67.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 66.

68.   "The right to petition the government for a redress of grievances is one of the most precious of the liberties safeguarded by the Bill of Rights, and is high in the hierarchy of First Amendment values. The right to petition the government for redress of grievances is such a fundamental right as to be implied by the very idea of a government, republican in form." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288-89 (11th Cir. 2019) (internal punctuation marks and citations omitted).

69.   "A petition may consist of a 'personal grievance addressed to the government' and may be an oral grievance." *Floyd v. Cty. of Miami-Dade*, No. 17-CV-21709, 2017 U.S. Dist. LEXIS 76631 at *9 (S.D. Fla. May 18, 2017) (quoting *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 394 (2011) and citing *Mack v. Warden, Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016)).

70.   The public comment period at school board meetings is a forum that enables people to exercise their fundamental First Amendment right to petition their elected government officials.

71.   The Public Participation Policy's prohibition on personally addressing school board members; and on speech deemed "personally directed" or "abusive," violate the First Amendment right to petition on its face by impermissibly prohibiting and limiting petitions on the basis of viewpoint. These prohibitions are not designed to confine the forum to the limited and legitimate purposes for which it was created. Instead, the Public Participation Policy suppresses petitions for redress, respecting matters properly before the school board, when Defendants disagree with the dissenting viewpoints in the petitions and do not want their authority or judgment challenged.

72.   By enforcing the Public Participation Policy, Defendants, under color of law, deprive Plaintiffs of the right to petition in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to nominal damages, declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT FOUR
RIGHT TO PETITION, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

73.  Plaintiffs reallege and incorporate by reference paragraphs 1 through 72.

74.  All of Plaintiffs' public speech at Board meetings is fully protected by the First Amendment right to petition the government for a redress of grievances.

75.  As applied against Plaintiffs, the Public Participation Policy's prohibitions on personally addressing school board members and on speech deemed "personally directed," "obscene," or "abusive" violated and continue to violate Plaintiffs' First Amendment right to petition by impermissibly discriminating against their petitions on the basis of their viewpoint.

76. As applied against Plaintiffs, the Public Participation Policy's prohibitions on personally addressing school board members and on "personally directed" comments also violate Plaintiffs' First Amendment rights because these prohibitions are not reasonable in light of the public comment period's purpose. Petitioning a school board for a redress of grievances will necessarily require referencing individuals—especially members of the school board.

77.  By enforcing these provisions against Plaintiffs, Defendants, under color of law, deprived and continue to deprive Plaintiffs of the right to

petition in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to nominal damages, declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT FIVE
VAGUENESS, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

78.  Plaintiffs reallege and incorporate by reference paragraphs 1 through 77.

79.  Because notice is the first element of due process, the Fourteenth Amendment's Due Process Clause prohibits the enforcement of vague laws. The First Amendment likewise forbids the enforcement of laws that are so vague as to chill protected speech.

80.  The Public Participation Policy's prohibitions of speech deemed "personally directed," "abusive," or "obscene" are each unduly vague, serving only to authorize Defendants' arbitrary censorship of speech they dislike.

81.  By enforcing these provisions, Defendants, under color of law, deprive Plaintiffs of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are

damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to

nominal damages; declaratory and preliminary and permanent injunctive

relief against continued enforcement and maintenance of Defendants'

unconstitutional customs, policies, and practices; and attorney fees and

expenses pursuant to 42 U.S.C. § 1988.

COUNT SIX
RIGHT OF FREE SPEECH AND PETITION,
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
DISCRIMINATORY ADMISSION TO SCHOOL BOARD MEETINGS

82.   Plaintiffs reallege and incorporate by reference paragraphs 1 through

81.

83.   The public has a right to access to school board meetings on an equal

basis to petition their elected officials, and without regard to the viewpoints

that they might express during the meetings. Where access to meetings is

limited, or where BPS cannot accommodate all who wish to attend and speak

at its meetings, BPS must allocate meeting access in a manner that is

neutral with respect to people's viewpoints.

84.   By extending preferential access to a school board meeting on the

basis of viewpoint, and thereby limiting Plaintiffs' access to that meeting and

excluding them from that meeting on the basis of their viewpoints,

Defendants, under color of law, deprived Plaintiffs of the rights to free speech

and petition in violation of the First and Fourteenth Amendments to the

United States Constitution. Accordingly, Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to nominal damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Moms for Liberty - Brevard County, FL, Amy Kneessy, Ashley Hall, Katie Delaney, and Joseph Cholewa, request judgment be entered in their favor and against Defendants as follows:

A. An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the Brevard Public Schools Public Participation Policy's prohibitions on personally addressing school board members and on speech deemed "personally directed," "abusive," or "obscene," Public Participation at Board Meetings, Brevard Sch. Bd. Policy Manual § 0000 Bylaws, Code po0169.1 (2014); and from discriminating on the basis of viewpoint in providing access to school board meetings;

B. Declaratory relief consistent with the injunction, to the effect that Public Participation at Board Meetings, Brevard Sch. Bd. Policy Manual § 0000 Bylaws, Code po0169.1 (2014)'s prohibitions on speech personally addressing school board members and on speech deemed "personally directed" or "abusive,"  are unconstitutionally void and unenforceable as they violate the First Amendment rights of free speech and petition and the Fourteenth Amendment's guarantee of due process against vague laws; that Defendants' application of the "obscene" speech prohibition to speech that is merely offensive to them violates the First Amendment rights of free speech and petition; and further, that discriminating on the basis of viewpoint in providing access to school board meetings violates the First Amendment rights of free speech and petition;

C. Such other injunctive relief as this Court may direct;

D. Nominal damages of $17.91;

E. Costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

F. Any other relief this Court may grant in its discretion.

Dated: November 5, 2021                    Respectfully submitted,

                                           /s/ David Osborne
Ryan Morrison                              David Osborne
(*pro hac vice* to be sought)              GOLDSTEIN LAW PARTNERS, LLC
Martha Astor                               4651 Salisbury Rd., Suite 400
(*pro hac vice* to be sought)              Jacksonville, FL  32256
INSTITUTE FOR FREE SPEECH                  610-949-0444
1150 Connecticut Ave., NW                  dosborne@goldsteinlp.com
Suite 801
Washington, DC  20036
202-301-3300
rmorrison@ifs.org
astorm@ifs.org

*Counsel for Plaintiffs*