UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MOMS FOR LIBERTY – BREVARD COUNTY, FL, et. al, <br><br> *Plaintiffs*, <br><br> v. <br><br> BREVARD PUBLIC SCHOOLS, et. al, <br><br> *Defendants*. | Case No. 21-cv-1849 <br><br> PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

MOTION

Plaintiffs, Moms for Liberty – Brevard County, FL, Amy Kneessy, Ashley

Hall, Katie Delaney, and Joseph Cholewa, by counsel, move for a preliminary

injunction under Fed. R. Civ. P. 65(a) and Local Rule 6.02.

MEMORANDUM IN SUPPORT

I. INTRODUCTION

Brevard public school graduates doubtless learn the First Amendment

protects their rights to free speech, petition, and freedom from unreasonably

vague laws. However, members of the Brevard school board conduct their

meetings as if the First Amendment does not exist.

Plaintiffs and other members of the public that criticize the Defendants'

policies are regularly chastised, criticized, or silenced when they speak

- 1 -

during the public comment portion of school board meetings. But the Defendants' supporters are almost always allowed to speak uninterrupted and, on at least one occasion, were given preferred access to board meetings. Defendants compound this unconstitutional viewpoint discrimination with their public speaking policy's unlawful prohibition on petitioning these elected officials for redress during board meetings. Indeed, Defendants justify their speech restrictions with their vaguely worded public speaking policy, which gives them the discretion to silence voices they do not like and give license to voices they prefer.

Brevard County residents deserve the First Amendment's protection when they address their school board. Accordingly, the Court should grant Plaintiffs' motion for preliminary injunction.

## II.  FACTUAL BACKGROUND

### A.  *The Board's Public Participation Policy*

Brevard Public Schools ("BPS"), Brevard County's public school district, is administered by an elected board. The Board meets regularly and schedules a public comment period for each meeting pursuant to Florida law. *See* § 286.0114(2), Fla. Stat. "Members of the public shall be given a reasonable opportunity to be heard on a proposition[1] before the Board." Public

---

[1] "[A] proposition is an item before the Board for a vote, and includes, but is not necessarily limited to, all items on the agenda noted as unfinished business, consent, and nonconsent.

Participation at Board Meetings, Brevard Sch. Bd. Policy Manual § 0000 Bylaws, Code po0169.1 (2014) (the "Public Participation Policy").

To speak at a Board meeting, an individual must register with the Board and indicate "support, opposition, or neutrality on [the] proposition" he or she will discuss. *Id*. Speakers are recognized to speak by the Board Chair "in the order in which the requests were received," are allotted three minutes of speaking time, but the Chair has discretion to extend that time. *Id*.

All speakers must direct their comments "to the presiding officer; no person may address or question Board members individually." *Id*.

Under the Public Participation Policy, the Board Chair may:

1.   interrupt, warn, or terminate a participant's statement when the statement is too lengthy, personally directed, abusive, obscene, or irrelevant;
2.   request any individual to leave the meeting when that person does not observe reasonable decorum;
3.   request the assistance of law enforcement officers in the removal of a disorderly person when that person's conduct interferes with the orderly progress of the meeting;
4.   call for a recess or an adjournment to another time when the lack of public decorum so interferes with the orderly conduct of the meeting as to warrant such action.

---

A proposition may also include a vote on a motion to rescind or to amend action previously taken but does not generally include items on the special order agenda. A proposition does not include items wherever found on the agenda upon which the Board votes in its quasi-judicial capacity." Public Participation Policy.

*B. Moms for Liberty*

Moms for Liberty ("M4L") is a nonprofit 501(c)(4) group that advocates for parental rights at all levels of government. Plaintiffs are M4L's Brevard County chapter and four of its members. M4L's members regularly attend and participate at Board meetings.

M4L is committed to civility in its advocacy efforts. Plaintiffs do not engage in or condone any threatening words, behavior, or violence. Indeed, Plaintiffs believe the most effective advocates are "joyful warriors" that share their views in a positive, respectful, and peaceful manner, and rise above any scorn or intolerance from individuals that disagree with them. *See* Ex. 2, Hall Decl. at ¶ 9. Prior to Board meetings, M4L reminds its members of their commitment to civil discourse. *See e.g.*, *id.* at ¶ 10.

*C.  Defendants' unlawful censorship at school board meetings*

Defendants use the Public Participation Policy to discriminate against viewpoints that criticize their policies and to deny people their right to petition government officials for redress. Defendants' unconstitutional conduct takes three forms. First, Defendants frequently interrupt viewpoints that criticize their preferred policies, or they censor speakers that use particular words or terms that they dislike. Second, Defendants selectively apply the Public Participation Policy's facially unconstitutional directive against addressing board members or making "personally directed"

- 4 -

comments to bar mentioning individuals by name, a significant burden on addressing or criticizing government officials or their views. And third, on one occasion, Defendants provided preferential access to a Board meeting to people aligned with the Defendants' views and, consequently, limited the access of some individuals with views that diverged from the Board.

    i.   Viewpoint discrimination and censorship

Defendants censored an individual who called its policies "evil." Brevard Public Schools, March 23, 2021 Meeting Public Comment, https://bit.ly/3oT6DY4, Item E, Part 2 of 2 at 14:25-15:16 (last visited November 2, 2021); Ex. 3, Delaney Decl. at ¶ 3. Plaintiff Cholewa tried to express his dismay at Defendants' mask mandate for children, which he criticized as being in keeping with various policies allegedly endorsed by the Democratic Party. Brevard Public Schools, September 21, 2021 Meeting, https://bit.ly/3aEvDd2, Item E at 1:06:19-1:07:55 (last visited November 2, 2021); Ex. 4, Cholewa Decl. at ¶¶ 4, 8. But Defendants abruptly ejected him from the meeting before he could finish his remarks. *Id*. at ¶ 10. After the Board interrupted him for criticizing the notion that babies are born racist, *id*. ¶ 8, Cholewa continued, only to be interrupted when he added criticism of parents who transition their children's gender to his litany of masking comparisons. *Id*.

Eventually, after threatening to eject everyone from the meeting room, Haggard-Belford let Cholewa resume his remarks. *Id*. at ¶¶ 9-10.

But she abruptly ended Cholewa's speaking time, with approximately one minute remaining, and ordered him to leave the meeting after he questioned Defendants' fidelity to First Amendment free speech values. *Id.* at ¶ 10. Cholewa's statement that proved too much for the Board: "This is America. I know you don't like freedom. I know you don't like liberty. I know you don't like the Constitution. Guess what? I'm going to keep talking." *Id.*

Another individual tried to express her disapproval of the Defendants' transgender policies but Defendants stopped and censored her after she referred to the policy's advocates as the "liberal left." Brevard Public Schools, March 9, 2021 Board Meeting video, https://bit.ly/3p1I8YO, Item E part 1 of 2 at 9:42-10:45 (last visited November 2, 2021); Ex. 1, Kneessy Decl. at ¶ 5. And when one M4L member tried to explain that inappropriate books were available at Brevard elementary school libraries by reading one of the books, Defendants rebuked her because the language in the book was not "clean." Brevard Public Schools, October 26, 2021, Public Comment, https://bit.ly/2ZsO2YF, Item E10 at 50:00-50:34 (last visited November 2, 2021); Ex. 2, Hall Decl. at ¶ 7.

But individuals that offer praise to the Board are routinely allowed to violate the Public Participation Policy without disruption or rebuke. On at least one occasion, seven individuals were allowed to make complimentary

statements directly to school officials without interruption. *See* Brevard Public Schools, July 13, 2021 meeting, https://bit.ly/3BGafQP, Item E at 5:01:5:03, 10:25-10:30; 21:14-21:22; 24:42-24:48; 28:11-28:15; 30:39-30:41; and 33:36-33:49 (last visited November 2, 2021); Ex. 1, Kneessy Decl. at ¶ 8. Several pro-LGBTQ activists were allowed to express their agreement with the Board's policies, as well as gesture and speak directly to Defendants and audience members, without interruption. Brevard Public Schools, March 9, 2021 Board Meeting video, https://bit.ly/3p1I8YO, Item E, Part 1 of 2 at 18:47-18:52; Part 2 of 2 at 2:59-3:07; 7:27-7:37; 8:32-8:44; 10:48-10:56; 27:15-27:19 (last visited November 2, 2021); Ex. 1, Kneessy Decl. at ¶ 5.

And now, Defendants begin each meeting with threats of criminal prosecution if attendees "disrupt" the meeting under § 877.13, Fla. Stat. Plaintiffs are some of the Defendants' critics and they know that the Defendants will censor their critics. Plaintiffs also believe that if Defendants will engage in viewpoint discrimination against their critics, then they may deem criticism of Board policies a disruption under the criminal statute. *See* Ex. 1, Kneesy Decl. at ¶ 13; Ex. 2, Hall Decl. at ¶¶ 13, 15-16; Ex. 3, Delaney Decl. at ¶¶ 5-7. Therefore, because of Defendants' viewpoint discrimination and their threat of prosecution, Plaintiffs either do not speak or self-censor their speech, which amounts to an unconstitutional "chill" on their free speech rights. *Id.*

ii.   Selective prohibition of addressing Board members

When Plaintiff Cholewa criticized Defendants' COVID mask policies, he directed his comments toward the Defendant that represents his school district. *See* Ex. 4, Cholewa Decl. at ¶ 7. Defendant Susin interrupted, "Don't call out one of our school board members." *Id*. After some discussion, Cholewa asked, "So I can't talk about my representative from my district?" *Id*. Defendant Haggard-Belford replied, "No you cannot." *Id*.

Plaintiff Hall was also forbidden from speaking directly to Defendants. *See* Ex. 2, Hall Decl. at ¶ 13. Defendants applied the ban to other individuals as well. *See* Brevard Public Schools, March 23, 2021 Meeting Public Comment, https://bit.ly/3oT6DY4, Item E, Part 2 of 2 at 13:36-14:18 (last visited November 2, 2021); Ex. 3, Delaney Decl. at ¶ 3. Plaintiff Kneessy does not attempt to speak at Board meetings because she wants to make statements directed to specific board members, which the Policy forbids. *See* Ex. 1, Kneessy Decl. at ¶ 12.

Indeed, the Policy is often interpreted to mean that individuals cannot even *mention* individual Board members. For example, at the April 13, 2021 meeting, a student complaining about not being allowed to speak began her comment, "Jennifer Jenkins personally showed up to my school," but was interrupted by Haggard-Belford who interjected, "So hold on just one second everything needs to be directed to me and not calling out any individual

board members for me if you would. Okay? Thank you so much." Brevard Public Schools, April 13, 2021 Meeting Public Comment, https://bit.ly/3jBdUs0, Item E10 at 29:25-29:37 (last visited November 2, 2021); Ex. 2, Hall Decl. at ¶ 4. The student continued her criticism of Defendant Jenkins, but could only refer to Jenkins as "one board member," "this specific board member," and "this board member," while referring to other Defendants as "a few school board members." *Id.* at 29:40-30:48.

But Defendants frequently do not enforce this prohibition against friendly speakers. For example, a student was allowed to directly address Defendant Jenkins about access to schools for theatrical production rehearsals. *See* Brevard Public Schools, Feb. 23, 2021 Board Meeting video, https://bit.ly/3ayunrX, Item E at 19:03-19:18. (last visited November 2, 2021); Ex. 2, Hall Decl. at ¶ 3. At the March 9 meeting, several pro-LGBTQ activists were allowed to gesture at and speak directly to Defendants and audience members without interruption. *See* Brevard Public Schools, March 9, 2021 Board Meeting video, https://bit.ly/3p1I8YO, Item E, Part 1 of 2 at 18:47-18:52; Part 2 of 2 at 2:59-3:07; 7:27-7:37; 8:32-8:44; 10:48-10:56; 27:15-27:19 (last visited November 2, 2021); Ex. 1, Kneessy Decl. at ¶¶ 5, 11. On April 27, an individual was allowed to address and mention individual board members, in a friendly manner, and was not stopped or reprimanded. *See* Brevard Public Schools*,* April 27, 2021 Meeting Public Comment, https://bit.ly/

3pVknSP, Item E9 at 4:01-4:21 (last visited November 2, 2021); Ex. 1, Kneessy Decl. at ¶ 6. As mentioned above, *supra* pp. 6-7, seven individuals were allowed to make complimentary statements directedly to school officials at the July 13 meeting. None of these speakers were interrupted or admonished for their personally directed comments. *Id*. Most mentioned the BPS superintendent, but some referred to other school officials. *Id*.

And on October 26, a woman spoke directly to Defendant Jenkins multiple times, offered praise to the Board and Jenkins, and complained about the Board's critics without interruption. *See* Brevard Public Schools, October 26, 2021 Public Comment, https://bit.ly/2ZsO2YF, Item E10 at 50:00-50:34 (last visited November 2, 2021). The woman concluded her statement as her speaking time expired. Defendant Haggard-Belford praised the woman for her remarks by stating, "Thank you ma'am. We appreciate you joining us this evening. Your time is *unfortunately* up." *Id*. at 53:34-56:42 (emphasis added). Plaintiffs are unaware of an instance when Haggard-Belford stated it was unfortunate that the speaking time of a Board critic had expired.

### iii.  Discriminatory access to Board meetings

At the March 9 meeting, several pro-LGBTQ activists, some from outside Brevard County, were escorted into the school board meeting while Brevard residents who had arrived earlier and were waiting for the room to open (including M4L members) were excluded from the meeting. *See* Brevard

Public Schools, March 9, 2021 Board Meeting video, https://bit.ly/3p1I8YO, Item E, Part 1 of 2 at 18:47-18:52; Part 2 of 2 at 2:59-3:07; 7:27-7:37; 8:32-8:44; 10:48-10:56; 27:15-27:19 (last visited November 2, 2021); Brevard Public Schools, March 23, 2021 Meeting Public Comment, https://bit.ly/3oT6DY4, Item E, Part 2 of 2 at 0:13:36-0:14:18; Ex. 1, Kneessy Decl. at ¶ 5; Ex. 3, Delaney Decl. at ¶ 3; Ex. 4, Cholewa Decl. at ¶ 5. Law enforcement officials were positioned at the meeting room doors to keep these community members with disfavored views (including Plaintiff Cholewa), from attending the meeting while the activists with viewpoints favorable to the Board's policies were admitted. *See id.*

III. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019). The equities and public interest factors merge and favor an injunction when the government is enforcing an unconstitutional law. *See Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) (holding no interest when enforcing unconstitutional law); *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020) (noting merger).

Accordingly, First Amendment plaintiffs are "entitled to relief if [their] claim is likely to succeed." *Scott*, 612 F.3d at 1297. *See also Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010) (accepting concession in a political speech case that "if we find that [plaintiff] is likely to succeed on the merits, the other requirements for a preliminary injunction are satisfied").

IV. ARGUMENT

    A.    Plaintiffs are likely to prevail on the merits.

    *1. The Public Participation Policy violates the Free Speech Clause.*

The First Amendment, applied to the states via the Fourteenth Amendment, embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Speech cannot be silenced because it criticizes government officials or policies even if individuals believe the criticism is offensive.

The public comment portion of a school board meeting is a limited public forum, *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir. 2017), which is created by the government "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of

certain subjects." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1985) (citation omitted).

While "a limited public forum may rightly limit speech at the forum to only certain content, the First Amendment does not tolerate viewpoint-based discrimination against speech within the scope of the forum's subject matter." *Barrett*, 872 F.3d at 1225 n.10. Speech restrictions in a limited public forum "must be reasonable and viewpoint neutral." *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011). Accordingly, limiting public comment at the Defendants' meetings to a "proposition before the Board," the Public Participation Policy, or some other "reasonable" content-based regulation, is permissible only if the rules are "viewpoint neutral." *Barrett*, 872 F.3d at 1225; *Gay Lesbian Bisexual All. v. Pryor*, 110 F.3d 1543, 1549 (11th Cir. 1997).

"Viewpoint discrimination is . . . an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). It occurs "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* Indeed, viewpoint discrimination "goes beyond mere content-based discrimination and regulates speech based upon agreement or disagreement with the particular position the speaker wishes to express." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Ath. Ass'n*, 942 F.3d 1215, 1241 (11th

Cir. 2019) (internal quotation marks and citation omitted). Viewpoint discrimination is presumptively unconstitutional. *Rosenberger*, 515 U.S. at 830.

Defendants discriminate against those espousing viewpoints critical of them and their policies. Individuals that share the Defendants' views, praise them, or do not offer criticism are almost always allowed to speak uninhibited, *supra* pp. 6-7, while individuals, like Plaintiff Cholewa, that criticize school policies are frequently silenced. *See* Ex. 4, Cholewa Decl. at ¶¶ 5-10; *supra* pp. 5-6. And, on at least one occasion, individuals with views the Defendants favor were given preferred access to speak at a Board meeting, while Plaintiffs, and people that share their views, are excluded from the meeting altogether. *Supra* pp. 10-11.

Additionally, the Public Participation Policy's prohibition on "personally directed" or "abusive" speech is viewpoint discrimination. In *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 891, 895 (6th Cir. 2021), the Sixth Circuit facially invalidated a school board public speaking policy, holding that restrictions on "abusive" and "personally directed" speech "prohibit speech because it opposes, or offends, the Board or members of the public, in violation of the First Amendment." *Id.* at 895 (citing *Matal v. Tam*, 137 S. Ct. 1744 (2017) and *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019)). "[T]he government may not censor speech merely because it is 'offensive to some.'" *Id.* at 894

(citing *Matal*, 137 S. Ct. at 1763). After all, "[g]iving offense is a viewpoint." *Matal*, 137 S. Ct. at 1763.

Here, Defendants silenced Plaintiff Cholewa because his speech was directed to a Board member, *see* Ex. 4, Cholewa Decl. at ¶¶ 6-7, and deemed "insulting." *Id.* at ¶ 8. Defendants rebuked another man when he directedly addressed a Board member and called Defendants' policies "evil." Brevard Public Schools, March 23, 2021, Meeting Public Comment, https://bit.ly/3oT6DY4, Item E, Part 2 of 2 at 13:36-16:42 (last visited November 2, 2021); Ex. 3, Delaney Decl. at ¶ 3. This type of viewpoint discrimination commonly occurs at Board meetings.

Beyond viewpoint, Defendants' frequent enforcement of the Policy to bar even the mere mention of their names is an impermissible content-based restriction of speech, because it is fundamentally not compatible with the limited public forum's purpose. Discussing the Board and its policies inherently requires at least the occasional mention of school board members.

Finally, Defendants' policies "have a significant potential to chill [Plaintiffs'] speech on the basis of content and viewpoint." *Barrett*, 872 F.3d at 1230. Plaintiffs Kneessy, Hall, and Delaney are Board critics and know Defendants regularly interrupt and silence individuals that share their views. These Plaintiffs also believe that if Defendants are willing to discriminate against viewpoints, they may also deem criticism of their

policies a "disruption" of a board meeting. *See* Ex. 1, Kneessy Decl. a ¶¶ 12-15; Ex. 2, Hall Decl. at ¶¶ 12, 15-16; Ex. 3, Delaney Decl. at ¶¶ 5-7. Because of Defendants' constant viewpoint discrimination and their warnings that anyone deemed to cause a disruption at a Board meeting could be subject to criminal prosecution, Kneessy, Hall, and Delaney self-censor their speech and are, thus, unconstitutionally chilled from fully exercising their free speech rights. *See id.* This First Amendment "wrong of Defendants' creation" merits injunctive relief. *Barrett,* 872 F.3d at 1230.

2. *The Public Participation Policy violates the Petition Clause.*

"The right to petition the government for a redress of grievances is one of the most precious of the liberties safeguarded by the Bill of Rights, and is high in the hierarchy of First Amendment values." *DeMartini v. Town of Gulf Stream,* 942 F.3d 1277, 1288 (11th Cir. 2019) (internal punctuation marks and citations omitted). The right "is such a fundamental right as to be implied by the very idea of a government, republican in form," *id.* at 1288-89 (internal punctuation marks and citations omitted), because it "allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives." *Borough of Duryea v. Guarnieri,* 564 U.S. 379, 388 (2011).

"A petition may consist of a 'personal grievance addressed to the government' and may be an oral grievance." *Floyd v. Cty. of Miami-Dade,* No.

17-cv-21709, 2017 U.S. Dist. LEXIS 76631 at *9 (S.D. Fla. May 18, 2017) (quoting *Guarnieri*, 564 U.S. at 394, and citing *Mack v. Warden, Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016)). And although "[c]ourts should not presume there is always an essential equivalence in the [Speech and Petition] Clauses or that Speech Clause precedents necessarily and in every case resolve Petition Clause claims," *Guarnieri*, 564 U.S. at 388 (citation omitted), Petition Clause claims may be decided using Speech Clause analysis. *Id.* at 389; *Grigley v. City of Atlanta*, 136 F.3d 752, 754-55 (11th Cir. 1998).

Under the circumstances here, the viewpoint discrimination analysis for Plaintiffs' speech claims, also proves their petition claims. Defendants use the Public Participation Policy to prevent Plaintiffs and other individuals presenting their grievances. When Defendants silence individuals because their comments are directed to a Board member, or even merely mention a Board member; or because their speech is allegedly insulting; or because they use language that the Board dislikes (such as by calling a policy "evil," or by reading a school library book in debating its suitability for children), they violate the Petition Clause. Consequently, Plaintiffs are likely to succeed on the merits of their Petition Clause claims for the same reasons as their Speech Clause claims.

3. *The Public Participation Policy is overbroad and void for vagueness.*

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A regulation can be "impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *Chicago v. Morales*, 527 U.S. 41, 56-57 (1999)). And "where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (internal punctuation marks and citations omitted).

"The void-for-vagueness doctrine addresses 'at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.'" *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1349 (11th Cir. 2021) (quoting *F.C.C. v. Fox Television Stations, Inc.*,

- 18 -

567 U.S. 239, 253 (2012)). Indeed, indeterminate prohibitions create opportunities for abuse through open-ended interpretation. *See Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1891 (2018). The discretion of a board meeting's presiding officer "must be guided by objective, workable standards. Without them [the official's] own politics may shape his views on what counts as [prohibited speech]." *Id.*

"In First Amendment free speech cases, [], 'rigorous adherence to th[e]se requirements is necessary to ensure that ambiguity does not chill protected speech.'" *Burns*, 999 F.3d at 1349 (quoting *Fox Television Stations*, 567 U.S. at 253-54). Because if "government actors [are] 'free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case,' it leads to "[a]rbitrary enforcement" of the law. *United States v. Matchett*, 837 F.3d 1118, 1122 (11th Cir. 2016) (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966)).

"Content-based regulations thus require a more stringent vagueness test." *Wollschlaeger v. Governor*, 848 F.3d 1293, 1320 (11th Cir. 2017) (en banc) (internal quotation marks omitted). The "'government may regulate in the area' of First Amendment freedoms 'only with narrow specificity.'" *Id.* (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

The overbreadth doctrine is similar, but not identical, to the vagueness doctrine. *See Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) (explaining

that "traditionally viewed vagueness and overbreadth as logically related and similar doctrines"). A speech regulation "may be overbroad and have an unconstitutional chilling effect on speech even if it is not vague." *Henderson v. McMurray*, 987 F.3d 997, 1005 (11th Cir. 2021). "For the First Amendment, a law is facially invalid if it 'punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.''" *Fla. Ass'n of Prof'l Lobbyists Inc. v. Div. of Legislative Info. Servs.*, 525 F.3d 1073, 1079 (11th Cir. 2008) (quoting *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003)).

More specifically, a regulation is overbroad when the government allows the "'scope'" of the rule "'to reach both unprotected expression as well as, at least potentially, protected speech.'" *Wacko's Too, Inc. v. City of Jacksonville*, 522 F. Supp. 3d 1132, 1159 (M.D. Fla. 2021) (quoting *American Booksellers v. Webb*, 919 F.2d 1493, 1502 (11th Cir. 1990)). Speech regulations "may not 'sweep unnecessarily broadly and thereby invade the area of protected freedoms.'" *Id.* (quoting *NAACP v. Alabama*, 377 U.S. 288, 307 (1964)). "In First Amendment cases, there exists a serious concern that overbroad laws may lead to a chilling effect on protected expression." *Id.* (citing *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998); *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965)).

Here, the Public Participation Policy is unconstitutionally vague and overbroad for the same reasons. The Policy sets no boundaries for its prohibitions on speech that is "abusive," "personally directed," or "obscene." It is incapable of reasoned application and, consequently, allows viewpoint discrimination. The Public Participation Policy provides no "objective, workable standards," but, instead, allows Defendants' "own politics" to shape their views on what is prohibited. *Minn. Voters All.,* 138 S. Ct. at 1891. The scope of the rule allows Defendants to prohibit "'both unprotected expression as well as, at least potentially, protected speech.'" *Wacko's Too, Inc.*, 522 F. Supp. 3d at 1159 (quoting *American Booksellers*, 919 F.2d at 1502). These terms have "[u]ncertain meanings" at Board meetings that cause individuals to steer further from the unlawful speech zone than necessary, which, consequently, consumes lawful speech at Board meetings. *Grayned*, 408 U.S. at 109. Indeed, the overbreadth of the Policy raises "serious" First Amendment concerns that its application "may lead to a chilling effect on protected expression." *Wacko's Too, Inc.*, 522 F. Supp. 3d at 1159.

Plaintiff Cholewa was silenced under this provision of the Policy because his criticism of the Board and its policies was "insulting," Ex. 4, Cholewa Decl. at ¶¶ 8, 10, Defendants told a man to not call the Board's policies "evil," Brevard Public Schools, March 23, 2021, Meeting Public Comment, https://bit.ly/3oT6DY4, Item E, Part 2 of 2 at 14:18-16:42; Ex. 3, Delaney

- 21 -

Decl. at ¶3, and when a M4L member read from a Brevard elementary school library book to demonstrate how inappropriate the content was for children, Defendants stopped her because the language was not "clean." Brevard Public Schools, October 26, 2021, Public Comment, https://bit.ly/2ZsO2YF, Item E9 at 50:00-50:34; Ex. 2, Hall Decl. at ¶ 7.

The language Defendants censor does not come close to "obscene" speech, defined as speech "utterly without redeeming social importance." *Miller v. California*, 413 U.S. 15, 20, (1973). Nor does it amount to "personally abusive epithets … likely to provoke violent reaction," a.k.a., "'fighting words,'" which can be regulated. *Cohen v. California*, 403 U.S. 15, 20 (1971). Instead, Defendants are using the vague and overbroad terms of the Public Participation Policy to silence speech common in today's political discourse, *see e.g.,* Ex. 4 Cholewa Decl. ¶¶ 7-8, 10, and a reading from an elementary school library book. Accordingly, the Policy is unconstitutionally vague and overbroad.

B.    Plaintiffs will suffer irreparable harm without injunctive relief.

Defendants will continue to silence Plaintiffs without injunctive relief. "There can be no question that the challenged restrictions, if enforced, will cause irreparable harm. 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam)

(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010).

Defendants' viewpoint discrimination, the Public Participation Policy's prohibition on Plaintiffs' right to petition, and its unconstitutionally vague and overbroad language inflict First Amendment injuries on Plaintiffs at each Board meeting.

C.    The balance of equities favors Plaintiffs.

Plaintiffs' interests suffer a heavier burden without equitable relief than Defendants' interests suffer with an injunction. Defendants use the Public Participation Policy to prevent Plaintiffs from exercising their First Amendment rights. Without the Policy, Defendants can still administer Brevard Public Schools and otherwise conduct Board meetings. Unless the Court acts, Plaintiffs will continue to suffer irreparable harm. But Defendants suffer no harm regardless of the Court's ruling.

D.    The public interest is served by protecting constitutional rights.

No one has an interest in the enforcement of an unconstitutional law. "Indeed, the Eleventh Circuit has held 'the public interest is served when constitutional rights are protected.'" *Wynn v. Vilsack*, __ F. Supp. 3d __, No. 21-cv-514, 2021 U.S. Dist. LEXIS 117042 at *47 (M.D. Fla. June 23, 2021) (quoting *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1327).

V.  THE COURT SHOULD WAIVE RULE 65(C)'S SECURITY REQUIREMENT.

The Court should not require Plaintiffs to post a bond because they have a high probably of success on their claims, Defendants will not suffer monetary damages from the injunction, the government is the defendant, and First Amendment rights are at issue. *See Univ. Books & Videos, Inc. v. Metro. Dade Cnty.*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999); *Maxwell v. Sch. Dist. of Volusia Cty.*, No. 20-cv-1954, 2020 U.S. Dist. LEXIS 206581, at \*12 (M.D. Fla. Oct. 23, 2020).

VI. CONCLUSION

Plaintiffs' motion for preliminary injunction should be granted.

Dated: November 5, 2021                          Respectfully submitted,

                                                 /s/ David Osborne
Ryan Morrison                                    David Osborne
(*pro hac vice* to be sought)                    GOLDSTEIN LAW PARTNERS, LLC
Martha Astor                                     4651 Salisbury Rd., Suite 400
(*pro hac vice* to be sought)                    Jacksonville, FL  32256
INSTITUTE FOR FREE SPEECH                         610-949-0444
1150 Connecticut Ave., NW                         dosborne@goldsteinlp.com
Suite 801
Washington, DC  20036
202-301-3300
rmorrison@ifs.org
astorm@ifs.org

                     *Counsel for Plaintiffs*

- 24 -