## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

MOMS FOR LIBERTY –
BREVARD COUNTY, FL,  et al.

      Plaintiffs,                 CASE NO.: 6:21-cv-1849-RBD-GJK

vs.

BREVARD PUBLIC SCHOOLS, et al.,

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendants, Brevard Public Schools ("BPS"), Misty Haggard-Belford, Matt Susin, Cheryl McDougall, Katye Campbell, and Jennifer Jenkins (Haggard-Belford, Susin, McDougall, Campbell, and Jenkins are collectively "Individual Defendants") (BPS and Individual Defendants are collectively "Defendants"), by and through undersigned counsel and pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, hereby move to dismiss the Complaint (Doc. 1) filed by Plaintiffs, Moms for Liberty – Brevard County, FL ("MFL"), Ashley Hall, Amy Kneessy, Katie Delaney, and Joseph Cholewa (Hall, Kneessy, Delaney, and Cholewa are collectively "Individual Plaintiffs") (MFL and Individual Plaintiffs are collectively "Plaintiffs"), and state:

## Introduction and Requested Relief

As an initial matter, the Court should dismiss the Complaint as a

shotgun pleading. Should the Court reach the merits of Plaintiffs' claims, the Court should find that Plaintiffs lack standing. Furthermore, the claims against the Individual Defendants in their official capacities should be dismissed with prejudice as redundant, and the claims against the Individual Plaintiffs in their individual capacities should be dismissed with prejudice due to qualified immunity. The Complaint also completely fails to allege a basis for § 1983 liability against Defendants Susin, Campbell, McDougall, and Jenkins. In addition, the Court should dismiss the claims against BPS because it is not vicariously liable for the alleged actions of individuals, and because BPS' Public Participation Policy ("Policy") is not deliberately indifferent to Plaintiffs' constitutional rights. Finally, all of the counts are insufficiently pled.

## Argument and Incorporated Memorandum of Law

### A.    The Complaint is a Shotgun Pleading.

The Court should dismiss the Complaint as a shotgun pleading that does not meet the requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The 11th Circuit has "identified four rough types or categories of shotgun pleadings": a complaint (1) "containing multiple counts where each count adopts the allegations of all preceding counts . . ."; (2) "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) that does "not separat[e] into a different count each cause of action or claim for relief"; and

(4) that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

The Complaint meets several of these categories. First, beginning with Count II, each count of the Complaint not only re-alleges Plaintiffs' factual allegations, but also the allegations contained in the previous counts. (Doc. 1 at ¶¶ 61, 67, 73, 78, 82.) The Complaint also contains numerous allegations that are not clearly connected to any cause of action. The first two-and-a-half pages of the Complaint consist of an unnumbered "Introduction," the majority of which is targeted at Jenkins for expressing her viewpoints on COVID mask policy discussions and intimidation tactics she has suffered[1]—points that are never again repeated in the Complaint, let alone incorporated into the counts of the Complaint. The Complaint also references the fact that Belford-Haggard now opens Board meetings by citing to § 877.13, Florida Statutes (which was deemed constitutional in *O.P-G. v. State*, 290 So. 3d 950, 959 (Fla. 3d DCA 2019)), (Doc. 1 at ¶ 42), but does not allege that this is part of the Policy. Moreover, the Complaint references "proposed amendments" to the Policy in

---

[1] Ironically, Plaintiffs take issue with Jenkins utilizing her own right of free speech.

passing, but does not describe the amendments. (*Id.* at ¶ 49.)

Finally, the counts of the Complaint are directed to ***all*** Defendants, without specifying which of the Defendants are responsible for which acts or omissions, or which of the Defendants the claims are brought against.

Dismissal of Plaintiffs' Complaint as a shotgun pleading is proper. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014).

**B.     Plaintiffs Lack Standing to Base Their Claims on Harms Allegedly Suffered by Non-MFL Members.**

The Complaint is replete with allegations regarding alleged "censorship and viewpoint discrimination" against individuals who are ***not*** MFL members. (Doc. 1 at ¶¶ 28-34, 37-38). Plaintiffs lack standing to invoke alleged injuries to third parties as grounds for their claims. *See Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1178 n.4 (11th Cir. 2009) ("[A]n organization may not bring suit on behalf of non-members."). Accordingly, these allegations cannot form the basis of Plaintiffs' claims and must be disregarded.

**C.     MFL Fails to Sufficiently Allege Standing.**

Prior to considering the merits of Plaintiffs' claims, the Court must first assess whether Plaintiffs sufficiently alleged Article III standing. *See Amnesty*, 559 F.3d at 1176. As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. *Id.* at 1177 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 560, 561 (1992)).

MFL has two options for asserting standing: it can bring claims on its own behalf, and/or it may assert claims on behalf of its members. *See id.* at 1178. However, the Complaint fails to specify the capacity in which MFL brings its claims.

MFL vaguely claims, as do Individual Plaintiffs, that the Policy and its proposed amendments "chill Plaintiffs' speech, impact the content of their speech, suppress the viewpoints they want to express, and diminish their willingness to participate at Board meetings. . . . [T]he restrictions' presence chills their expression." (Doc. 1 at ¶ 49.) However, MFL does not claim that it, as an organization, ever sought to express any viewpoints at Board meetings that were censored or restricted. MFL alleges only ***one*** instance in which an MFL member other than Individual Plaintiffs was "censored" for reading a book excerpt (*Id.* at ¶ 47.) However, upon review of the video cited by Plaintiffs in the Complaint, the speaker in question spoke for her full three allotted minutes and was not further interrupted as she continued her point of criticizing the books available in public schools, including by quoting another book she found disturbing. (*Id.*; https://bit.ly/2ZsO2YF, Item E at 47:46-51:00.)[2]

---

[2] The Court "must consider documents outside the four corners of the complaint, without converting the motion to dismiss into a motion for summary judgment, if the document is central to the plaintiff's claims and is undisputed." *Hamilton v. Blum*, 08-61336-CIV, 2009 WL 10666972, at *6 (S.D. Fla. Dec. 4, 2009), *report and recommendation adopted*, 2010 WL 11504343 (S.D. Fla. Jan. 20, 2010) (citing *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th

The insufficiency of MFL's allegations is demonstrated when they are contrasted with the allegations in *Amnesty*. There, Amnesty alleged that

> its **own** First Amendment rights were violated because 'it was unable to have its message heard, . . . it was unable to distribute literature to the people, it was unable to obtain media coverage of its rally/demonstration . . . and it was unable to speak to representatives of the media.'

*Amnesty Int'l*, 559 F.3d at 1178 (emphasis added). The 11th Circuit held that these specific allegations were sufficient to establish Amnesty's standing to assert claims in its own capacity as an organization. *Id.* In this case, unlike Amnesty, MFL fails to allege that it, individually, ever attempted to speak at a Board meeting or that it has any intent to do so. MFL therefore fails to establish an injury-in-fact on its own behalf.

MFL also fails to sufficiently allege a basis to bring its claims on behalf of its members. To represent members in litigation, an organization must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

---

Cir. 2005); *Fed. Ins. Co. v. Castle Beach Club Condo. Assoc., Inc.*, 2006 WL 3544835 (S.D. Fla. Dec. 8, 2006)). Here, the videos cited in the Complaint are central to Plaintiffs' claims and are undisputed by the parties.

The Court should find that MFL cannot meet the third prong of representational standing.[3] Under this prong, "associational standing fails where the nature of the claim or relief sought is not common to all members of the association or shared in equal degree, such that 'both the fact and extent of injury would require individualized proof.'" *Minor I Doe ex rel. Parent I Doe v. Sch. Bd. for Santa Rosa Cnty., Fla.*, 264 F.R.D. 670, 688 (N.D. Fla. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975)). A claim that First Amendment rights were violated or chilled is "highly dependent on a showing of individual and particularized factual circumstances that are not common" to all members of an organization. *Id.* (organization failed to establish associational standing in case alleging that free speech rights were chilled). In this case, the alleged effects of the Policy on MFL members' right to free speech are individualized and do not affect all members equally. Therefore, MFL cannot meet the third prong of representational standing.

For the above reasons, the Court should dismiss MFL's claims.

## D. Plaintiffs Lack Standing to Allege that the Policy "Chills" Their Speech.

To the extent that Plaintiffs' claims are based on the alleged "chilling"

---

[3] Clearly, Plaintiffs determined that Individual Plaintiffs were necessary parties to this lawsuit. This begs the question: why must Individual Plaintiffs be named, but no other individual members are necessary for MFL to assert claims on a representational basis?

effect of the Policy, Plaintiffs cannot establish standing. This is particularly the case with Plaintiff Kneessy, who bases her claims entirely on the allegation that the Policy "chills" her speech. (Doc. 1 at ¶ 50.)

Where a government restriction is alleged to produce a "chilling effect" on First Amendment rights, the chilling effect must constitute self-censorship to avoid a real threat of enforcement consequences in order to satisfy the actual injury requirement of standing. *See Pittman v. Cole,* 267 F.3d 1269, 1283 (11th Cir. 2001). This requires a plaintiff to show "an intention to engage in a course of conduct arguably affected with a constitutional interest," but prohibited, and that there is a credible threat of enforcement consequences as a result of engaging in that conduct. *Id.* "A party's subjective fear that she may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable." *Wilson v. State Bar of Ga.,* 132 F.3d 1422, 1428 (11th Cir. 1998). For injury to be imminent, "the anticipated injury [must] occur within some fixed period of time in the future," and "not too far off." *Am. Civil Liberties Union of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd.,* 557 F.3d 1177, 1193–94 (11th Cir. 2009).

Plaintiffs claim in one breath that the Policy "chills" their speech, but in the next breath describe multiple occasions on which Plaintiffs Hall, Delaney, and Cholewa addressed the Board under that same Policy. Plaintiffs do not allege any facts describing meetings when Plaintiffs opted not to speak or

censored their language due to the Policy, nor do Plaintiffs describe any "enforcement consequences" to which they would be subject under the Policy.

Also, while Plaintiffs claim that the adoption of language at the start of Board meetings referencing § 877.13, Florida Statutes chills their speech, Plaintiffs do not present any factual allegations to support that conclusion. Plaintiffs do not challenge the constitutionality of § 877.13, nor can they. *See O.P-G.*, 290 So. 3d 950, 959 (Fla. 3d DCA 2019). Furthermore, unless Plaintiffs intend to engage in speech that will disrupt a Board meeting (which they do not allege), Plaintiffs do not have an objectively reasonable fear of enforcement. *See id.* ("[T]he regulation punishes only that speech generating disruption, not speech merely intending to effect an impact.").

Therefore, insofar as Plaintiffs base their claims on the "chilling" effect of the Policy or the reference to § 877.13, Plaintiffs fail to sufficiently allege standing. With regard to Kneessy, whose claims are based entirely on "chilling," this is fatal. The Court should dismiss Plaintiffs' claims based on the Policy's alleged chilling effects, including all of Plaintiff Kneessy's claims.

**E.    The Claims Against Individual Defendants in Their Official Capacities Are Redundant.**

Where a § 1983 plaintiff asserts claims against both a governmental entity and individual officers in their official capacity, claims against the officers are "redundant and due to be dismissed." *Gregory v. City of Tarpon*

*Springs*, 8:16-CV-237-T-33AEP, 2016 WL 7157554, at *6 (M.D. Fla. Dec. 8, 2016). "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Furthermore, Florida law specifies that a school board has the capacity to be sued, thus removing any need for Individual Defendants to be named. *See* § 1001.41(4), Fla. Stat. (2021). Therefore, the claims against Individual Defendants in their official capacities should be dismissed with prejudice. *Gregory*, 2016 WL 7157554, at *6; *see also Ross v. City of Tarpon Springs*, No. 8:11-cv-2671-T-30EAJ, 2012 WL 1382271, at *3 (M.D. Fla. Apr. 20, 2012); *Cannon v. City of Sarasota*, No. 8:09-cv-739-T-33TBM, 2010 WL 962934, at *3 (M.D. Fla. Mar. 16, 2010).

**F.**   **Plaintiffs Fail to Allege that Defendants Susin, Campbell, McDougall, and Jenkins Deprived Plaintiffs of Constitutional Rights Under Color of Law.**

It is axiomatic that to prevail § 1983, Plaintiffs must show "(1) that the defendant deprived her of a right secured by the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998). Plaintiffs allege that Defendant Belford-Haggard deprived them of their First Amendment rights by interrupting them or asking them to leave a Board meeting. (Doc. 1 at ¶¶ 24, 40, 43-47.) However, with the exception of two lines from Defendant Susin to

Plaintiff Cholewa (*id.* at ¶ 40), Plaintiffs do not allege any interaction whatsoever between them and Defendants Susin, McDougall, Campbell, and Jenkins. (*See generally id.*) And even with Defendant Susin's brief interaction with Plaintiff Cholewa, Cholewa continued his comments after an exchange with Defendant Belford-Haggard. (*Id.* at ¶ 40.)

Plaintiffs therefore fail to allege that Defendants Susin, McDougall, Campbell, or Jenkins took any actions whatsoever that deprived them of a constitutional right, let alone that any such actions occurred under color of law. The Court should thus dismiss the claims against these Defendants.

## G.   Individual Defendants Are Qualifiedly Immune.

Plaintiffs' claims against Individual Defendants in their individual capacities are fatally flawed because Plaintiffs cannot show that Individual Defendants violated a clearly established constitutional right held by Plaintiffs. Therefore, Individual Defendants are qualifiedly immune from suit.

"Qualified immunity protects government officials (sued individually) if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dayton v. Seward*, 2:20-cv-307-SPC-MRM, 2021 WL 5163225, at *3 (M.D. Fla. Nov. 5, 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "For the doctrine to apply, the 'official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Id.*

(quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). The burden then shifts to Plaintiffs to show that qualified immunity is not appropriate. *Id.*

In analyzing an official's discretionary authority, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Estate of Cummings v. Davenport*, 906 F.3d 932, 941 (11th Cir. 2018) (internal quotations omitted). There is no dispute that any alleged actions by Defendants were within the scope of their discretionary authority. The Policy provides that comments "may" be interrupted, and that audience members "may" be asked to leave. (Doc. 1 at ¶ 19.) The Policy is discretionary, and any alleged application of it is within Defendants' discretionary authority.

Upon establishing that Defendants acted within their discretionary authority, the burden then shifts to Plaintiffs to show that qualified immunity is not appropriate. *Dayton*, 2021 WL 5163225, at *3. This analysis has two parts: (1) whether the facts show that Defendants' conduct violated a constitutional right; and (2) whether the right was "clearly established." *Id.*

Plaintiffs cannot show that Defendants violated a "clearly established" right. The First Amendment does not guarantee persons the right to communicate their views "at all times or in any manner that may be desired." *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989). "The right's contours must be 'sufficiently clear that every reasonable [official] would have

understood that what he was doing violates the law.'" *Dayton*, 2021 WL 5163225, at *3 (quoting *Fuqua v. Turner*, 996 F.3d 1140, 1150 (11th Cir. 2021)). "Plaintiffs cannot define clearly established law at a high level of generality. Rather, the clearly established law must be particularized to the facts of the case." *Id.* (internal quotations omitted). This may be shown in three ways:

> (1) [C]ase law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Id.* (quoting *Perez v. Syszcynski*, 809 F.3d 1213, 1222 (11th Cir. 2016)).

In *Dayton*, plaintiffs asserting claims similar to those at issue in this case failed to show that the defendant violated a "clearly established" constitutional right. There, the plaintiffs alleged that a city council chairperson violated their First Amendment rights by interrupting them during the public comments portion of a meeting for personally-directed remarks toward a particular council member. *Id.* at *1. In considering qualified immunity, the Court quickly disposed of the first and third ways to show a "clearly established" right, noting that the plaintiff did not point to any "binding and indistinguishable" case law to support his claim, and that the chairperson's conduct was not "so egregious that it obviously or clearly violated the Constitution." *Id.* at *4 (citing *Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017) for the proposition that

"egregious conduct" occurs only in "rare situations").

The Court then considered and rejected the second route. *Id.*; *see also King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020) (noting that a party taking the second route "usually means qualified immunity is appropriate"). The Court observed that the council's rules on citizen comments, which required speakers to "act with decorum," limited speaking time, and gave the council chair the discretion to "limit material or redundant presentations or requests," furthered the council's "balancing act to reconcile First Amendment rights with a government's interest in transacting its business at public meetings." *Id.* at *6. Thus, the rules "do not clearly establish [that the chair] could not interrupt Plaintiffs and limit personal attacks on Councilmembers." *Id.* Similarly, the Court found that "sweeping free speech principles do not clearly establish a right that [the chair] violated." *Id.* at *7. "The 'First Amendment does not guarantee persons the right to communicate their views 'at all times or in any manner that may be desired.'" *Id.* (quoting *Jones*, 888 F.2d at 1331). "The law on decorum restrictions at government meetings is inherently fact dependent," and case law demonstrates that the enforcement of rules of decorum at such limited public forums "is not an obvious clarity case." *Id.* The Court therefore concluded that the chairperson did not violate a "clearly established right," and that qualified immunity applied. *Id.* at *8.

The instant case is much like *Dayton*. The Policy regulates the decorum

and procedure of Board meetings, over which the Chair is required to maintain order. Like the rules at issue in *Dayton*, the Policy itself does not set out a "clearly established right" of unfettered speech during the public comment sections of Board meetings, since it allows the Chair to exercise discretion in interrupting comments and asking audience members to leave if their conduct so requires. Also, as the *Dayton* Court observed, First Amendment case law on the enforcement of decorum-based policies at government meetings is not so defined as to create a "clearly established right." Therefore, Defendants' alleged discretionary actions in enforcing the Policy do not violate a "clearly established right" held by Plaintiffs, and qualified immunity applies. The Court should thus dismiss the counts against the Defendants in their individual capacities with prejudice.

## H.   <u>BPS is Not Vicariously Liable.</u>

To the extent that Plaintiffs' claims against BPS are based on Belford-Haggard's alleged actions, the claims must fail because BPS is not vicariously liable under § 1983 for injuries allegedly caused by individuals. *See Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978); *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004). In other words, Plaintiffs do not have a cause of action against BPS because Belford-Haggard interrupted Plaintiffs or asked them to leave a Board meeting. *See Seegmiller v. Sch. Bd. of Collier County*, 2:15-CV-87-FTM-38DNF, 2015 WL 3604608, at *3 (M.D. Fla.

June 7, 2015).

Additionally, "[t]o press a claim under § 1983 against a municipality, 'a plaintiff must show . . . that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right." *Seegmiller*, 2015 WL 3604608, at *3 (quoting *McDowell,* 392 F.3d at 1289). While Plaintiffs offer "unadorned conclusions that the Board's actions and policies constituted an unconstitutional restraint on [their] speech," Plaintiffs fail to allege facts supporting that the Policy was "deliberately indifferent" to their First Amendment rights. *Id.*

Thus, the Court should dismiss the claims against BPS with prejudice.

## I. <u>Counts I and III Fail to State a Claim Because the Policy is Not Facially Unconstitutional.</u>

### 1. School Board Meetings Are Limited Public Forums.

As Plaintiffs concede (Doc. 1 at ¶ 55), the public comment portions of the Board's meetings are limited public forums. "[C]ontent-based discrimination . . . is permitted in a limited public forum if it is viewpoint neutral and reasonable in light of the forum's purpose." *Barrett v. Walker County Sch. Dist.*, 872 F.3d 1209, 1225 (11th Cir. 2017); *see Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001) ("The State is not required to . . . allow persons to engage in every type of speech" in limited public forum). Viewpoint discrimination occurs "when the specific motivating ideology or the opinion or

16

perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

> **2.     On its Face, the Policy is Viewpoint Neutral and Does Not Violate Plaintiffs' Constitutional Rights.**

On its face, the Policy (the provisions of which are found at Doc. 1, ¶¶ 15-19) is viewpoint-neutral. It aims to ensure the orderly conduct of Board meetings and is not targeted at the opinion or perspective of the speaker.

"The government's purpose in limiting one's speech in a public forum constitutes the 'controlling consideration' in determining content neutrality." *Jones*, 888 F.2d at 1331-32. "Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotations omitted). This is true "[e]ven if a limitation on speech incidentally affects only some speakers." *Id.* at 1332.

Requiring speakers to direct their comments, whatever they may be, to the Board Chair does not prohibit any speech whatsoever. On its face, this requirement does not prevent speakers from voicing their views on any topic. Instead, it merely informs the speaker of the person to whom his or her opinions should be directed.

Second, affording the Chair discretion to interrupt, warn, and terminate "lengthy, personally directed, abusive, obscene, or irrelevant" comments and

to maintain observance of decorum is critical to preventing disruption. *See Steinburg v. Chesterfield Cnty Planning Comm'n*, 527 F.3d 377, 386-87 (4th Cir. 2008) (noting that personal attacks inevitably lead to "argumentation" which "has the real potential to disrupt the orderly conduct of the meeting"). These provisions do not ban any speech and balance the importance of public input and the Board's need to conduct its business in an orderly manner. This keeps the focus of the meeting on the business of the Board. Any incidental effect they may have is irrelevant. *Jones*, 888 F.2d at 1332.

The 11th Circuit recently agreed, recognizing that a school board's public comment policy prohibiting "speech that 'defames individuals'" was implemented to "maintain proper decorum and avoid disruptive meetings." *Dyer v. Atlanta Indep. Sch. Sys.*, 852 Fed. Appx. 397, 398 (11th Cir. 2021), *cert. denied sub nom. Dyer v. Atlanta Indep. Sch. Sys.*, 21-213, 2021 WL 5284619 (U.S. Nov. 15, 2021) ("*Dyer II*"); *see also Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 783-84 (7th Cir. 2011); *Ballard v. Patrick*, 163 Fed. Appx. 584 (9th Cir. 2006); *Brown v. City of Jacksonville, Fla.*, No. 3:06-CV-122-J-20MMH, 2006 WL 385085, at *3 (M.D. Fla. Feb. 17, 2006); *Charnley v. Town of S. Palm Beach*, No. 13-81203-CIV, 2015 WL 12999749, at *8 (S.D. Fla. Mar. 23, 2015), *report and recommendation adopted sub nom. Charnley v. Town of S. Palm Beach Fla.*, 2015 WL 12999750 (S.D. Fla. Apr. 9, 2015), *aff'd*, 649 Fed. Appx. 874 (11th Cir. 2016).

Requirements that comments be relevant to the business at hand, decorum be observed, and comments be addressed to the Board Chair serve the limited purpose for which the meetings are convened and apply to every speaker, regardless of viewpoint. Thus, the Policy provisions at issue are the type of viewpoint-neutral restrictions permitted in a limited public forum.

### 3. The Policy is Narrowly Tailored to Serve a Significant Government Interest.

The Policy is narrowly tailored to serve the Board's interest in maintaining decorum, preventing disruptions, and conducting efficient meetings. *See Jones*, 888 F.2d at 1332. The Policy "need not be the least-intrusive or least-restrictive means." *Id.* at 1333. Rather, "'the requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.''" *Id.* at 1332 (quoting *Ward*, 491 U.S. 781). As explained above, the Policy consists of viewpoint-neutral restrictions that further the compelling Board interest in orderly and efficient meetings. It cannot fairly be argued that allowing speakers to directly address and question Board members, and affording the Chair no discretion to limit abusive, obscene, and personally directed remarks, would lead to a more efficient and orderly meeting.[4]

---

[4] Plaintiffs argue that the Policy violates their First Amendment right to petition the government for redress of grievances for the same reasons it violates their right to free speech. Because Plaintiffs' right to petition

**J.   Counts II and IV Fail to State a Claim Because the Policy is Not
Unconstitutional as Applied.**

The Policy is not applied in a manner that discriminates against
speakers' viewpoints. Plaintiffs describe four instances in which MFL members
were interrupted while speaking and one instance when Cholewa was asked to
leave a meeting. (Doc. 1 at ¶¶ 24, 39, 40, 43, 44, 46, 47.) However, Plaintiffs'
own allegations, and the videos to which Plaintiffs cite in the Complaint,
demonstrate that these minimal instances were due to violations of the neutral
Policy and not due to the viewpoints espoused by Plaintiffs.

First, Plaintiffs acknowledge that the Policy requires speakers to direct
comments to the Board Chair (*id.* at ¶ 18), and that on two of the occasions
when they were interrupted, they were directing comments to specific Board
members. (*Id.* at ¶¶ 24, 39-40.) As Plaintiffs admit, other individuals who were
not MFL members were also interrupted for not addressing the Board Chair.
(*Id.* at ¶¶ 30, 34, 37.)

Furthermore, the videos to which Plaintiffs cite demonstrate that over
the course of the 9 Board meetings referenced by Plaintiffs, identifiable MFL

---

argument rises and falls on the basis of their free speech argument and
Plaintiffs do not allege any new or different arguments as to their right to
petition claim, Defendants submit that the Plaintiffs' petition argument fails
for the same reasons described above.

members (including Individual Plaintiffs) spoke at least 52 times,[5] with the only interruptions being those described in the Complaint. (Doc. 1 at ¶¶ 24, 27, 34, 35, 37, 39, 41, 43, 47.)[6] These videos also demonstrate that the majority of public commenters at Board meetings—whether MFL members or not—are critical of Board policies and/or Board members. However, they are not interrupted unless they violate the Policy. The videos also reflect multiple occasions on which individuals who expressed opinions ***opposite*** to those of Plaintiffs ***were*** interrupted under the viewpoint-neutral Policy.

The Policy was applied to prevent disruption to the Board's ability to conduct its business, rather than to chill the expression of viewpoints. As the 11th Circuit affirmed in *Dyer II*, the application of a neutral policy to prevent the disruption of a school board meeting is not a constitutional violation. *See* 852 Fed. Appx. at 402 ("AISS did not regulate Dyer's speech based on its content, *i.e.*, because it was offensive. Rather, AISS regulated Dyer's offensive speech ***because it was disruptive***.") (emphasis added).

---

[5] This pertains only to the 9 meetings identified in the Complaint. MFL members, including Individual Plaintiffs, spoke numerous other times without interruption at other Board meetings.

[6] These paragraphs identify the following videos: https://bit.ly/3ayunrX, at Item E; https://bit.ly/3p1I8YO, at Item E; https://bit.ly/3jBdUs0, at Item E; https://bit.ly/3pVknSP, at Item E9; https://bit.ly/3oXYO39, at Item E, Part 2 of 2; https://bit.ly/3oVXVIF, at Item E6; https://bit.ly/3BGafQP, at Item E; https://bit.ly/3aEvDd2, at Item E; https://bit.ly/2ZsO2YF, at Item E10.

Like the plaintiff in *Dyer*, Plaintiffs have repeatedly addressed the Board uninterrupted when their comments do not violate the Policy and disrupt Board meetings. *See Dyer v. Atlanta Indep. Sch. Sys.*, 426 F. Supp. 3d 1350, 1359-60 (N.D. Ga. 2019) ("*Dyer I*") ("Here, APS officials were not regulating Dyer's speech because they were offended by and attempting to silence his criticism of APS. Other attendees had previously expressed criticism of APS without incident. Dyer himself before and since the incidents in question—has been allowed to freely criticize APS policy decisions and board members when he has done so without the use of racial slurs."). This reflects that Defendants did not apply the Policy to discriminate against Plaintiffs based on their viewpoints, which Plaintiffs repeated each time they spoke to the Board, typically without interruption.

Application of the Policy was also narrowly tailored. *See id.* at 1333 (actions taken to avoid disruption to government meetings must be "narrowly tailored to achieve this interest"). MFL members were interrupted due to violations of the Policy on very few occasions. Typically, these interruptions were brief, speaking time was not taken away from the speakers, and the speakers were able to continue their comments without further interruption. On only one occasion, when Cholewa was asked to leave the September 21, 2021 meeting, did an interruption of a Plaintiff escalate past such a brief interruption. This was due to the continued disruption that Cholewa caused to

the meeting. Such an application of the Policy is not unconstitutional. *See Brown*, 2006 WL 385085, at *3-4.

Finally, even an occasional error in implementing the Policy (which Defendants do not concede), does not rise to the level of a constitutional violation. *See Jones*, 888 F.2d at 1334.

The Court should therefore dismiss Counts II and IV.

## K.  **Count V Fails to State a Claim Because the Policy is Not Unconstitutionally Vague or Overbroad.**

"In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). If not, the overbreadth challenge fails and "[t]he court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Id.*

Plaintiffs' conduct that violates the reasonable viewpoint-neutral restrictions imposed by the Board over its limited public forum is not protected by the First Amendment. *See Charnley*, 2015 WL 12999749, at *8. The Policy only implicates disruptive conduct outside of the First Amendment's protection in a limited public forum and therefore does not reach a substantial amount of

constitutionally protected conduct and is not overbroad. *See Jones v. City of Key West, Fla.*, 679 F. Supp. 1547, 1559 (S.D. Fla. 1988), *rev. on other grounds*, 888 F.2d at 1332 (public meeting policy prohibiting "obscene or profane speech" and "loud or boisterous behavior," "while not the model of draftsmanship" was nevertheless not unconstitutionally overbroad or vague); *see also Milestone*, 665 F.3d at 784-85; *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, (5th Cir. 2010); *White v. City of Norfolk*, 900 F.2d 1421, 1425 (9th Cir. 1990).

Similarly, the Policy is not unconstitutionally vague. It is informed by its dual purposes of ensuring the public's right to participate in Board meetings, and the orderly and efficient conduct of meetings. These purposes inform the Chair in exercising her authority to interrupt, warn, or terminate abusive, personally directed, obscene, irrelevant, and lengthy speech. Accordingly, the Policy, while "flexible" and allowing for the "exercise of considerable discretion," is limited by its focus on disruptive conduct regardless of viewpoint and is therefore not vague in every respect. *Ward*, 491 U.S. at 794-96. Indeed, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.*

## L.   Count VI Fails to State a Claim for Discriminatory Access.

Plaintiffs fail to allege sufficient facts to support Count VI. While Plaintiffs claim that Cholewa was prevented from speaking at the March 9, 2021 meeting when "several pro-LGBTQ activists" were escorted into the

Board's building, Plaintiffs do not allege **who** escorted these "activists" into the building or who decided that the "activists" should be escorted in. (Doc. 1 at ¶ 25.) Plaintiffs also fail to acknowledge the hostile and unsafe conditions caused by protesters outside the Board's building on March 9, which were described during the meeting by at least one public commenter who identified herself as the president of the Trump Club. *See* https://bit.ly/3p1I8YO, at Item E 33:40 (cited in Doc. 1 at ¶ 27). Some people were thus escorted in to ensure their safety. Actions taken merely to ensure the safety and welfare of citizens do not violate the Constitution. *See Bayside Enters., Inc. v. Carson*, 470 F. Supp. 1140, 1147 (M.D. Fla. 1979).

Despite the vagueness of their factual allegations, Plaintiffs allege that "Defendants" excluded "Plaintiffs" from the meeting. This claim fails for a complete lack of factual support showing that Defendants acted to prevent Plaintiffs from attending the meeting and should be dismissed.

## Conclusion

For all the reasons stated above, the Complaint is due to be dismissed.

WHEREFORE, Defendants respectfully request that the Court enter an Order dismissing the Complaint with prejudice, and provide any other and further relief that the Court deems necessary and proper.

Respectfully submitted this 20th day of December, 2021.

*/s/Gennifer L. Bridges*

HOWARD S. MARKS
Florida Bar No.: 0750085
Email: hmarks@burr.com
Secondary Email: echaves@burr.com
GENNIFER L. BRIDGES
Florida Bar No.: 0072333
Email: gbridges@burr.com
Secondary Email: nwmosley@burr.com
SHEENA A. THAKRAR
Florida Bar No.  871141
Email: sthakrar@burr.com
Secondary Email: echaves@burr.com
BURR & FORMAN LLP
200 S. Orange Avenue, Suite 800
Orlando, Florida 32801
Tel: (407) 540-6600
Fax: (407) 540-6601
*Attorneys for Defendants*

## LOCAL RULE 3.01(g) CERTIFICATE

I HEREBY CERTIFY that on this 20th day of December, 2021, I conferred via telephone with David Osborne, Esq., counsel for Plaintiffs, regarding the instant Motion. The parties could not agree on the relief requested herein or reach a resolution without Court intervention.

*/s/ Gennifer L. Bridges*
Gennifer L. Bridges (FBN 0072333)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of December, 2021, a true and correct copy of the foregoing was filed via the CM/ECF system, which will provide electronic notice to the following counsel of record:

David Osborne
Goldstein Law Partners, LLC
4651 Salisbury Rd., Suite 400, Jacksonville, FL 32256
dosborne@goldsteinlp.com

Ryan Morrison
Martha Astor
Institute for Free Speech
1150 Connecticut Ave., NW, Suite 801, Washington, DC 20036
rmorrison@ifs.org
astorm@ifs.org

*/s/ Gennifer L. Bridges*
Gennifer L. Bridges (FBN 0072333)