UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MOMS FOR LIBERTY - BREVARD
COUNTY, FL; AMY KNEESSY;
ASHLEY HALL; KATIE DELANEY;
and JOSEPH CHOLEWA,

    Plaintiffs,

v.                                    Case No. 6:21-cv-1849-RBD-GJK

BREVARD PUBLIC SCHOOLS;
MISTY HAGGARD-BELFORD;
MATT SUSIN; CHERYL
MCDOUGALL; KATYE
CAMPBELL; and JENNIFER
JENKINS,

    Defendants.
_____

## ORDER

Before the Court are:

1. Plaintiffs' Motion for Preliminary Injunction (Doc. 3 ("Motion")); and

2. Defendants' Response in Opposition to Motion for Preliminary Injunction (Doc. 19).

Plaintiffs' Motion is due to be denied.

## BACKGROUND[1]

In this First Amendment case, Plaintiffs, Moms for Liberty ("M4L") and some of its members, are a nonprofit group who describe themselves as seeking "to organize, educate and empower parents to defend their parental rights." (Doc. 1, ¶¶ 3–7.) They allege that Defendants, Brevard County Public Schools and school board members ("Board"), unconstitutionally discriminated against their views by impeding Plaintiffs' participation at Board meetings. (*Id.* ¶¶ 8–13, 23.)

Plaintiffs allege that the Board has an unconstitutionally restrictive and vague Public Participation Policy ("Policy"). (*Id.* ¶¶ 15, 59, 80.) The Policy requires all statements at Board meetings to be directed to the Board's chair ("Chair"), not individual Board members. (Doc. 20, p. 114.) It also provides that the Chair may, among other things, "interrupt, warn, or terminate a participant's statement when the statement is too lengthy, personally directed, abusive, obscene, or irrelevant" and "request any individual to leave the meeting when that person does not observe reasonable decorum." (*Id.*)

Further, Plaintiffs allege that the Chair selectively applies the Policy to limit viewpoints with whom she disagrees. (*See* Doc. 1, ¶ 63.) For instance, Plaintiffs

---

[1] "[A]ll of the well-pleaded allegations [in a movant's] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true" for the purposes of this Motion, though the actual facts may turn out differently. *See City of S. Mia. v. Desantis*, 408 F. Supp. 3d 1266, 1283 (S.D. Fla. 2019) (cleaned up).

allege that the Chair once asked Plaintiff Joseph Cholewa to leave as he discussed transgender children because Cholewa was "insulting half our audience" and not being "respectful." (*Id.* ¶¶ 44–46.) In contrast, Plaintiffs allege that the Chair once allowed several pro-LGBTQ activists to gesture at and speak directly to Board members without interruption. (*Id.* ¶ 27.)

So Plaintiffs sued asking the Court to find the Policy unconstitutional facially and as applied. (*Id.* ¶¶ 51–84.) Plaintiffs then moved for a preliminary injunction. (Doc. 3.) Defendants opposed. (Doc. 19.) After a hearing (Doc. 42), the matter is ripe.

## STANDARDS

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (cleaned up). To obtain one, the movant must "clearly establish": (1) substantial likelihood of success on the merits; (2) irreparable injury; (3) the injury to the movant outweighs any to the opposing party; and (4) the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). If the first element is not met, a court may deny a preliminary injunction without considering the others. *See, e.g.*, *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994).

## ANALYSIS

### I.   Content and Viewpoint Discrimination

First, Plaintiffs argue that Defendants' Policy is unconstitutional both on its face and as applied because the restriction on "personally directed" or "abusive" speech purportedly constitutes content and viewpoint discrimination.[2] (Doc. 3, pp. 14–16.) The Court disagrees.

Though Plaintiffs use them interchangeably, "[v]iewpoint and content discrimination are separate, but related concepts." *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115, 1124 (M.D. Fla. 2019). A content-neutral restriction is one that is "justified without reference to the content of the regulated speech"—even if it affects only some speakers.[3] *See Jones v. Heyman*, 888 F.2d 1328, 1332 (11th Cir. 1989) (cleaned up). Restrictions "outlining how someone may speak at a community meeting, prohibiting disruption, and requiring decorum are content-neutral policies." *Dyer v. Atlanta Indep. Sch. Sys.*, 852 F. App'x 397, 398, 402 (11th Cir. 2021), *cert. denied*, No. 21-213, 2021 WL 5284619 (U.S. Nov. 15, 2021); *see also Jones*, 888 F.2d at 1332 (finding that removal of disruptive speaker at public forum meeting was content-neutral).

---

[2] Plaintiffs' free speech and petition claims rely on the same arguments, so the Court analyzes them together. (*See* Doc. 3, p. 17.)

[3] Plaintiffs do not contest that the restrictions served a significant governmental interest. (*See* Doc. 3, pp. 12–22.) "There is a significant governmental interest in conducting orderly, efficient meetings of public bodies." *Rowe v. City of Cocoa*, 358 F.3d 800, 803 (11th Cir. 2004).

But in a limited public forum like the one here,[4] not all restrictions must be content-neutral because the forum is not "open to the public at large for discussion of any and all topics." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir. 2017) (cleaned up). So content-based restrictions on expression in a limited public forum are permitted if they are viewpoint-neutral and reasonable, given the forum's purpose.[5] *See id.* at 1225. A viewpoint-neutral restriction on content is one that is evenhandedly applied without regard to the specific message being advocated. *See Cleveland v. City of Cocoa Beach*, 221 F. App'x 875, 878–79 (11th Cir. 2007) (cleaned up).

On its face, the Policy is both content- and viewpoint-neutral.[6] It allows the Chair to interrupt speech only when it is "too lengthy, personally directed, abusive, obscene, or irrelevant." (Doc. 20, p. 114.) Requiring the speaker to address the Chair rather than individual Board members is not based on the speech's content, but because members do not possess the power of the Board.[7] (Doc. 19,

---

[4] The parties agree that Board meetings are a limited public forum. (Doc. 3, p. 12; Doc. 19, p. 3.)

[5] Plaintiffs do not contest that the Policy is reasonable in light of the forum's purpose. (*See* Doc. 3, pp. 13–16.) In any event, the Policy is reasonable in light of the meetings' purpose in "recogniz[ing] the value . . . of public comment on educational issues" while permitting the Board to "maintain[] orderly conduct or proper decorum" in the limited public forum setting. (*See* Doc. 20, p. 113.)

[6] At the hearing, Plaintiffs' counsel was unable to adequately explain how he would rewrite the Policy to make it content- and viewpoint-neutral while maintaining decorum. (*See* Doc. 42.)

[7] The requirement to address the chair also encourages, rather than chills, the freedom of

p. 5.) And prohibiting abusive and obscene comments is not based on content or viewpoint, but rather is critical to prevent disruption, preserve "reasonable decorum," and facilitate an orderly meeting—which the Eleventh Circuit[8] has held on multiple occasions is permissible. (*Id.*); *see Jones*, 888 F.2d at 1332; *Dyer*, 852 F. App'x at 402; *see also Rowe v. City of Cocoa*, 358 F.3d 800, 803 (11th Cir. 2004). So Plaintiffs are unlikely to succeed in this facial challenge.

Nor are Plaintiffs likely to succeed in their as-applied challenge, which argues that Defendants restricted Plaintiffs' critical viewpoints at the meetings while encouraging views they respect. (Doc. 3, p. 14.) The record does not support

---

speech because it "turns down the heat" and "gives people a sense of fairness" in hearing all viewpoints. *See* April Lawson, *Building Trust Across the Political Divide*, Comment (Jan. 21, 2021), https://comment.org/building-trust-across-the-political-divide. *See generally* Braver Angels, https://braverangels.org (last visited Jan. 12, 2022).

[8] Plaintiffs' argument to the contrary barely warrants mention, as it is based on wholly inapposite and unpersuasive out-of-Circuit cases that directly conflict with binding and persuasive Eleventh Circuit authority. (*See* Doc. 3, pp. 14–15; Doc. 18); *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887 (6th Cir. 2021); *Marshall v. Amuso*, No. 21-4336, 2021 WL 5359020 (E.D. Pa. Nov. 17, 2021). Both of Plaintiffs' cited cases held that policies restricting abusive and personally directed speech were viewpoint-discriminatory, relying on *Matal v. Tam*, 137 S. Ct. 1744 (2017). *See Ison*, 3 F.4th at 893–94; *Marshall*, 2021 WL 5359020, at *4–8. But these cases fundamentally misapprehend *Matal*. Both holdings rely on this quote: "Giving offense is a viewpoint." 137 S. Ct. at 1763 (Alito, J., plurality op.); *see Ison*, 3 F.4th at 894; *Marshall*, 2021 WL 5359020, at 4. But that quotation comes from Part III.B. of the plurality opinion, not the opinion of the Court (a fact that *Ison* simply gets wrong when noting "all justices agreed that the 'anti-disparagement' clause discriminated based on viewpoint because '[g]iving offense is a viewpoint,'" *see* 3 F.4th at 894), so it is not binding. The full Court held only that a provision in the Lanham Act preventing private disparaging speech in the registration of trademarks was unconstitutional. *See Matal*, 137 S. Ct. at 1757–61 (Alito, J., majority op.). So the Court's opinion in *Matal* has no bearing on this case, which is about public speech in a limited public forum in a completely different context; as such, Plaintiffs' cases' reliance on *Matal* is misplaced. Here, *Jones* and *Dyer* control, and Plaintiffs did nothing to meaningfully distinguish them, either in their papers or at the hearing.

Plaintiffs' argument.

Plaintiffs have identified four instances from January to October 2021 in which the Chair interrupted M4L members—one in which the Chair asked that member to leave. (Doc. 3-1; Doc. 3-2, ¶ 13; Doc. 3-3; Doc. 3-4, ¶¶ 6, 8, 10, 11.) But those four instances were out of more than a hundred times in which M4L members spoke unimpeded.[9] (Doc. 20, p. 11.) The many hours of video reviewed shows these few interruptions were regularly brief and respectful, and Plaintiffs freely finished speaking. (*See* Doc. 21, pp. 4–5; *see, e.g.*, Doc. 20, p. 18.) The Chair also interrupted non-M4L members when they violated the Policy—including those making supportive comments or comments purportedly aligned with the view of the Chair—and conversely, she let M4L members and non-members purportedly disaligned with her view speak uninterrupted when they followed the policy. (*See, e.g.*, Doc. 20, pp. 16–17, 20–22, 24–25, 30–32, 44, 48–49, 69–74.) So the record evinces that the Policy was evenhandedly applied as a whole.[10] *See*

---

[9] Of the four individual Plaintiffs, Kneessy never attempted to speak, Delaney spoke many times and was never interrupted, Hall spoke often and was interrupted once, and only Cholewa was interrupted more than once and ejected once. (Doc. 3-1, ¶¶ 12, 15; Doc. 3-2, ¶ 13; Doc. 3-3, ¶ 13; Doc. 3-4, ¶¶ 6, 8, 10, 11.) Those Plaintiffs who were not interrupted likely lack standing to bring an as-applied claim because they have not alleged an injury in fact. *Cf. CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269–70 (11th Cir. 2006).

[10] Even if there were isolated instances when the Chair strayed from evenhandedness, "[a]n erroneous judgment call on the part of a presiding officer does not automatically give rise to liability for a constitutional tort," and the Eleventh Circuit has cautioned against Monday-morning quarterbacking of calls made by a presiding officer "without the benefit of leisure[ly] reflection." *See Jones*, 888 F.2d at 1334.

*Cleveland*, 221 F. App'x at 879.

As to the one time the Chair ejected Cholewa, she first warned him he was "pushing the limit" after he said the Democratic party accepts "the murder of full-term babies with abortion" and believes "white babies are born racist and oppressive." (*Id.* at 90.) She interrupted him again and asked him to leave after he had spoken for nearly two minutes, veered into other topics irrelevant to the discussion, and refused to stop after more warnings. (*Id.* at 91.) So Cholewa was permissibly excluded on that one occasion because his speech was abusive and disruptive. *See Dyer*, 852 F. App'x at 402 (upholding the exclusion of speaker for "abusive, abhorrent, and hate-filled" comments (cleaned up)). And he was free to—and did—return to future meetings, demonstrating that it was his actions, not his views, being sanctioned.[11] (*See, e.g.*, Doc. 20, pp. 93–94.) On this record, Plaintiffs have failed to clearly establish that they are likely to succeed in their as-applied challenge.[12]

---

[11] The fact that Cholewa was permitted to return, plus the hundred other times M4L members spoke unimpeded, contradicts Plaintiffs' brief assertion that Defendants' actions chilled Plaintiffs from expressing themselves. (*See* Doc. 3, p. 16); *Charnley v. Town of S. Palm Beach*, No. 13-81203, 2015 WL 12999749, at *8 (S.D. Fla. Mar. 23, 2015), *adopted*, 2015 WL 12999750 (S.D. Fla. Apr. 9, 2015), *aff'd*, 649 F. App'x 874 (11th Cir. 2016).

[12] As to Plaintiffs' passing assertion that they were unable to enter one meeting because of space limitations, attendees could still wait outside for their turn where audio of the meeting was being played (Doc. 20, p. 5), so their speech was not actually restricted. *See generally Jones*, 888 F.2d at 1334 (waiting to speak later in meeting is permissible alternative channel of communication).

## II.     Overbreadth and Vagueness

Plaintiffs also argue that the Policy is overbroad and void for vagueness, asserting that the Policy "sets no boundaries" for its prohibitions, chilling Plaintiffs' speech. (Doc. 3, p. 21.) Again, the Court disagrees.

A restriction is overbroad if it "reaches a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 (1982). Here, the Policy does not affect a substantial amount of constitutionally protected conduct because abusive, irrelevant, and disruptive speech is permissibly restricted in a limited public forum. *Cf. Dyer*, 852 F. App'x at 402; *Doe v. Valencia Coll.*, 903 F.3d 1220, 1232–33 (11th Cir. 2018); *United States v. Eckhardt*, 466 F.3d 938, 944 (11th Cir. 2006). So the Policy is not overbroad.

A restriction is unconstitutionally vague if it "does not give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" or it "leaves government actors free do decide, without any legally fixed standards, what is prohibited." *See United States v. Matchett*, 837 F.3d 1118, 1122 (11th Cir. 2016) (cleaned up). Here, the Policy precisely lists what it expects of speakers and the Chair, so it gives a person of ordinary intelligence warning of prohibited conduct. *See Horton v. City of St. Augustine*, 272 F.3d 1318, 1330–31 (11th Cir. 2001). And it does not lack fixed standards, as it lists five concrete reasons for which the Chair may interrupt speakers and the conduct that can lead to stronger sanctions,

9

and the Chair regularly explains these rules to attendees and applies them consistently. (Doc. 20, pp. 8–9, 43, 114); *see Doe*, 903 F.3d at 1233. As such, the Policy is not unconstitutionally vague.

With no likelihood of success on any of its challenges, Plaintiffs' Motion is due to be denied.[13]

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion (Doc. 3) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 24, 2022.



ROY B. DALTON JR.
United States District Judge

---

[13] The remaining elements also weigh against Plaintiffs. As to irreparable injury, even if Plaintiffs are "more reluctant" to share their views (Doc. 3-4, ¶ 11), the Policy has not stopped them; M4L members spoke as recently as October 26, 2021, just a few days before this action was filed. (*See, e.g.*, Doc. 20, pp. 99, 107–08); *Siegel*, 234 F.3d at 1178 (noting that ongoing violations of First Amendment rights give rise to a presumption of irreparable harm only when there is an "imminent likelihood that pure speech will be chilled or prevented altogether"); *cf. Barrett*, 872 F.3d at 1229 (irreparable harm existed where ability to speak at future school board meetings was impeded). And as to balancing equities and public interest, denying the injunction will delay a final resolution only temporarily, during which Plaintiffs remain free to participate, whereas there is a significant public interest in the Board conducting orderly public business, and the First Amendment does not require "endless public commentary." *See Rowe*, 358 F.3d at 803; *see also Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (noting that the purpose of a preliminary injunction "is to preserve the position of the parties as best we can until a trial"). So even if Plaintiffs were likely to succeed in their challenges, which they are not, Plaintiffs' Motion would still fail.

11