UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MOMS FOR LIBERTY – BREVARD COUNTY, FL, et. al,<br><br>*Plaintiffs*,<br><br>v.<br><br>BREVARD PUBLIC SCHOOLS, et. al,<br><br>*Defendants*. | Case No. 6:21-cv-1849-RBD-DAB<br><br>PLAINTIFFS' CORRECTED TRIAL BREIF |

CONTROLLING AUTHORITIES

- *Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020)

- *Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022)

ISSUES FOR TRIAL

- Whether Defendants objectively chilled Plaintiffs' speech. *See Speech First*, 32 F.4th at 1122.

- Whether Defendants discriminated against viewpoints. *See Otto*, 981 F.3d at 865 ("[T]here is a real difference between laws directed at conduct sweeping up incidental speech on the one hand and laws that directly regulate speech on the other. The government cannot regulate speech by relabeling it as conduct."); *Speech First*, 32 F.4th at 1127 ("The danger of viewpoint discrimination … is all the greater if the ideas or perspectives

-1-

[the government is attempting to remove] are ones a particular audience might think offensive, at least at first hearing." (internal quotation marks and citation omitted)).

## FACTUAL SUMMARY

A. The Board's Public Speaking Policy.

Brevard Public Schools ("BPS"), Brevard County, Florida's public school district, is administered by an elected board. Fla. Stat. §§ 1001.35, 1001.42. The Board meets regularly and schedules a public comment period for each meeting, which is governed by the Public Participation at Board Meetings, Brevard Sch. Bd. Policy Manual § 0000 Bylaws, Code po0169.1 (the "Policy").

The presiding officer may "interrupt, warn, or terminate a participant's statement when the statement is too lengthy, personally directed, abusive, obscene, or irrelevant." *Id*. The presiding officer may expel anyone that "does not observe reasonable decorum," and ask law enforcement to remove "disorderly" people. *Id*. Approximately three law enforcement officers attend each meeting. Defendant Misty Haggard-Belford ("Belford") was the Board chair.

B. Plaintiffs

Plaintiff Moms for Liberty – Brevard County, FL ("M4L") is the Brevard County, Florida chapter of Moms for Liberty, a nonprofit organization that advocates for parental rights at all levels of government. Plaintiff Ashley Hall

is a M4L member and was the chapter Chair from its inception until July 2022. Plaintiff Katie Delaney was a M4L member until March 2022. Plaintiff Joseph Cholewa is a M4L member. Plaintiff Amy Kneessy is a M4L member.

C. Censorship at Defendants' meetings.

   *1. Censorship of "personally directed," "abusive," or "obscene" statements.*

Defendants' Policy purportedly prohibits speech that is "personally directed," "abusive," or "obscene" to allegedly maintain meeting decorum. But the Policy does not define these terms and each board member defines them differently than Belford. (*See* Doc. 91, 2-3). Applying this Policy, for example, Belford censored public speakers for calling a Board policy "evil," calling Board policy advocates the "liberal left," saying "penis" during a discussion of a former teacher convicted of indecent exposure, and for reading from a school library book. *Id*. at 3-4. She also removed Plaintiff Cholewa from a Board meeting for offending Democrats during a speech where he compared Board policies to those purportedly supported by the Democratic Party. *Id*. at 4-5.

   *2. Prohibition on saying the names of school officials.*

The prohibition of "personally directed" statements prevents speakers from saying anyone's name, including the names of the elected board

members or other BPS personnel. *Id*. at 5. Belford claims the prohibition is necessary to maintain safety at board meetings. *Id*.

Belford silenced Plaintiff Cholewa when he criticized Defendants' COVID mask policies, and directed his political speech to the board member that represents his school district and supported the policies. Belford's censorship prompted Cholewa to ask, "So I can't talk about my representative from my district?" *Id*. at 6. Belford replied, "No you cannot." *Id*.

Belford also prevented Plaintiff Hall, the chair of M4L at that time, from saying a board member's name. *Id*. Wearing a M4L shirt, Hall attempted to thank a board member for his assistance in a school matter, but Belford interrupted her. *Id*. Later in an email to Hall, Belford instructed that "[a]ny identification of any individual board member [is] prohibited." *Id*.

Belford applied the prohibition to other individuals criticizing the performance of the elected board members. Her policy application included stopping a speaker that criticized board member Jennifer Jenkins for providing Board supporters preferred access to a previous meeting to the detriment of Board critics. *Id*. at 6-7. Belford censored a student criticizing Jenkins when she stated, "Jennifer Jenkins personally showed up to my school," and forced the student to continue her criticism by referring to Jenkins as "one board member," "this specific board member," and "this board

member." *Id*. at 7. And another student was silenced when she called for the resignation of specific board members by name. *Id*.

But Belford allowed an uncritical student to discuss Jenkins's presence at a school theatre rehearsal, and another woman to offer effusive praise and support of Jenkins by name repeatedly. *Id*.

Other examples of Belford allowing friendly speakers to mention individual board members and school personnel abound. *See id*. at 7-9.

*3. Belford's prohibition on negative speech.*

Belford's definitions of "abusive" and "obscene" show she applies these prohibitions to only negative speech. *Id*. at 9. And she applies the prohibition on "personally directed" comments to prevent negative reactions from listeners.

D. Censorship and Chilling of Plaintiffs' Speech

M4L members and the Plaintiffs have either had the Policy enforced against them or seen the Policy enforced against likeminded individuals but not against Board-friendly speakers. (*See* Doc. 91, 9-10). Consequently, Plaintiffs self-censor their comments or refrain from speaking at all under the Policy. *Id*.

Plaintiffs desire to express their beliefs and opinions with particular reference to individual board members, but are prevented by the Policy's prohibition on "personally directed" comments. *Id*. at 10. Plaintiffs also want

to discuss whether certain books are appropriate for school libraries or make other critical comments, but they are prevented by Belford's interpretation of the Policy's prohibition of "obscene" speech and FCC regulations. *Id*. And because of Belford's uncertain interpretation of "abusive" speech, Plaintiffs' critical comments could be deemed as violating the Policy. *Id*.

Defendants also warn everyone at Board meetings that they could face criminal prosecution if they "disrupt" the meeting under Fla. Stat. § 877.13. *Id*. Plaintiffs fear Belford will deem their speech criminally disruptive; causing Plaintiffs to modify their speech and, in Plaintiff Kneessy's case, to completely refrain from speaking. *Id*.

## SUMMARY OF ARGUMENT

The First Amendment exists to protect speech—including offensive speech—from government officials. Labeling offensive speech "personally directed," "abusive," or "obscene" does not grant government the license to silence speech.

School board meetings are limited public fora. *See Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir. 2017); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 & n.7 (1983). School officials may restrict the content of debate to school matters. *Barrett*, 872 F.3d at 1225 n.10. But in doing so, they must tolerate all viewpoints. *Id*.

Regulations against offensive speech is viewpoint discrimination. *See Otto v. City of Boca Raton*, 981 F.3d 854, 872 (11th Cir. 2020); Speech *First, Inc. v. Cartwright*, 32 F.4th 1110, 1126 (11th Cir. 2022). Defendants cannot interrupt, silence, or expel speakers voicing purportedly offensive speech from school board meetings by labeling it "personally directed," or "abusive," or by misapplying a legal prohibition on "obscene" speech to school library books or formal biological terms. And individuals cannot silence each other in a limited public forum by taking offense. The First Amendment does not allow a heckler's veto. *Speech First*, 32 F.4th at 1127; *Bledsoe v. City of Jacksonville Beach*, 20 F. Supp. 2d 1317, 1326 (M.D. Fla. 1998).

Moreover, Americans have the right to speak to and petition their elected officials for redress. There is nothing more fundamental to these rights than speaking the elected official's name—regardless of whether Defendants' Policy prohibits "personally directed" comments. Prohibiting these statements is also viewpoint discrimination. "Whatever the merits or demerits of those sorts of statements, they [ ] constitute core political speech, with respect to which First Amendment protection is at its zenith." *Speech First*, 32 F.4th at 1125 (internal quotation marks omitted).

Apart from the plain fact that Defendants interrupt and prevent Plaintiffs' speech when they mention a Board member's name or make purportedly offensive comments, Plaintiffs "are being chilled from engaging in

constitutional activity [and] suffer a discrete harm independent of [the Policy's] enforcement." *Id.* at 1120. It is irrelevant if some Plaintiffs continue speaking or if they occasionally avoid Policy enforcement when they share their views because Plaintiffs are self-censoring. When "the alleged danger of [the Policy] is one of self-censorship, harm can be realized even without an actual [enforcement]." *Id.* If "the operation or enforcement of the government policy would cause a reasonable would-be speaker to self-censor—even where the policy falls short of a direct prohibition against the exercise of First Amendment rights"—then he suffers an unconstitutional chill of his free speech rights. *Id.* (internal quotation marks and citations omitted).

Defendants' application of the Policy creates a credible threat of enforcement. Plaintiffs reasonably fear Policy enforcement because of their own experiences and knowledge of enforcement on others. (*See* Doc. 91, Facts § D). They also fear the threat of criminal prosecution if they violate the Policy. *Id.*

"Neither formal punishment nor the formal power to impose it is strictly necessary to exert an impermissible chill on First Amendment rights— indirect pressure may suffice." *Speech First*, 32 F.4th at 1123. Accordingly, it is irrelevant that Belford cannot enforce criminal law. "[A] defendant without [that] authority can also exert an impermissible type or degree of pressure." *Id.* (internal quotation marks and citation omitted). Due to the presence of

law enforcement officers in the meeting room and her authority to order speakers to exit the facility, Plaintiffs could reasonably believe Belford could retaliate against them with criminal sanctions if they do not comply with her directives. *See id*.

In sum, Belford's "enforcement of the [ ] [P]olicy [ ] cause[s] [ ] reasonable would-be speaker[s]," like Plaintiffs, "to self-censor." *Id*. at 1120. Moms for Liberty members and the Plaintiffs have either had the Policy enforced against them or seen the Policy enforced against likeminded individuals. (*See* Doc. 96, 13-16). Consequently, Plaintiffs self-censor their comments or refrain from speaking at all due to the Policy. *Id*.

## CONCLUSION

Defendants' application of the Policy discriminates against viewpoints deemed offensive and incorrectly deemed obscene. Defendants' Policy application forces Plaintiffs to self-censor due to a credible threat of Policy enforcement that they have observed and a reasonable belief that criminal prosecution is possible under the circumstances, creating an objective chill of their free speech rights. Therefore, the Court should find for the Plaintiffs.

## PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW

A. Findings of Fact

1. Defendants, Brevard Public Schools ("BPS") and Misty Haggard-Belford, applied the Public Participation Policy's prohibitions on "personally

directed," "abusive," and "obscene" comments in such a way to Plaintiffs, Moms for Liberty - Brevard County, FL, Amy Kneessy, Ashley Hall, Katie Delaney, and Joseph Cholewa, and other third-parties so as to cause Plaintiffs to self-censor their comments or not speak at all during the public participation portion of BPS school board meetings.

2. Defendants applied the Public Participation Policy's prohibitions on "personally directed," "abusive," and "obscene" comments in such a way to censor the statements of Plaintiffs and third-parties during the public speaking portion of BPS board meetings to prevent members of the audience at BPS school board meetings from taking offense at the statements from the Plaintiffs and third-parties, thus, becoming unruly, and then disturbing the meeting.

3. Instead of removing offended, unruly audience members from BPS school board meetings when they disturbed the meeting, Defendants either censored or removed Plaintiffs from the meeting for their comments that offended the audience members.

4. Defendants applied the Policy's prohibition on "obscene" speech to common profanity or formal biological terms.

5. Defendants applied the Policy's prohibition on "personally directed" comments to censor Plaintiffs' views to prevent audience members from taking offense to the comments, becoming unruly, and causing a

disruption when Plaintiffs attempted to petition the Defendants for redress by stating the name of board members and school officials.

6. Defendants took all their actions pursuant to an official BPS policy.

B. Conclusions of Law

1. As applied, Defendants' Policy's prohibitions on "personally directed," "abusive," and "obscene" comments are unreasonable.

2. Defendants applied the Policy in such a way that would "cause a reasonable would-be speaker to self-censor." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022).

3. Defendants applied the Policy in such a way to cause "a reasonable [public speaker] to fear expressing potentially unpopular beliefs." *Speech First, Inc.*, 32 F.4th at 1121.

4. Defendants objectively chilled Plaintiffs' speech, thus violating their free speech rights under the First Amendment. *See Speech First, Inc.*, 32 F.4th at 1122.

5. Defendants applied the Policy's prohibitions on "personally directed" and "abusive" speech in such a way to prevent listeners/audience members at school board meetings from being offended by Plaintiffs' comments.

6. Speech cannot be prohibited on the grounds that it expresses ideas that offend. *See Speech First*, 32 F.4th at 1126.

7. Using speech regulations to prevent offensive speech is viewpoint discrimination. *See Otto v. City of Boca Raton*, 981 F.3d 854, 872 (11th Cir. 2020); Speech *First, Inc.*, 32 F.4th at 1126.

8. Defendants discriminated against Plaintiffs' viewpoints in violation of the First Amendment.

9. Defendants applied the Policy's prohibitions on "obscene" speech on speech that was not obscene.

10. Defendants applied the Policy's prohibitions on "obscene" speech in an unlawful manner.

11. Defendants' application the Policy's prohibitions on "obscene" speech amounted to viewpoint discrimination in violation of the First Amendment.

12. Defendants' application the Policy's prohibitions on "personally directed" comments to statements that included the names of board members and school officials amounted to a violation of Plaintiffs' First Amendment petition rights.

13. Plaintiffs' First Amendment rights against chilled speech, viewpoint discrimination, and petition were clearly established at the time of the complained conduct.

14. Belford violated Plaintiffs' First Amendment rights pursuant to an official BPS policy.

15. BPS is vicariously liable for Belford's conduct.

16. Defendant Belford is not entitled to qualified immunity.

17. Plaintiffs are entitled injunctive relief.

18. Plaintiffs are entitled to nominal damages.

Dated: January 12, 2023                    Respectfully submitted,

/s/ Ryan Morrison

| | |
|---|---|
| David Osborne | Ryan Morrison (*pro hac vice*) |
| GOLDSTEIN LAW PARTNERS, LLC | INSTITUTE FOR FREE SPEECH |
| 4651 Salisbury Rd., Suite 400 | 1150 Connecticut Ave., NW, Suite 801 |
| Jacksonville, FL  32256 | Washington, DC  20036 |
| 610-949-0444 | 202-301-3300 |
| dosborne@goldsteinlp.com | rmorrison@ifs.org |

CERTIFICATE OF SERVICE

On January 12, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

/s/ Ryan Morrison
Ryan Morrison (*pro hac vice*)
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW, Suite 801
Washington, DC  20036
202-301-3300
rmorrison@ifs.org
*Lead Counsel for Plaintiffs*