UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MOMS FOR LIBERTY – BREVARD
COUNTY, FL; AMY KNEESSY;
ASHLEY HALL; KATIE DELANEY;
and JOSEPH CHOLEWA,

    Plaintiffs,

v.                                                Case No. 6:21-cv-1849-RBD-DAB

BREVARD PUBLIC SCHOOLS; and
MISTY HAGGARD-BELFORD,

    Defendants.
_____

## ORDER

Before the Court are the parties' cross-motions for summary judgment. (Doc. 90 ("Defendants' Motion"); Doc. 91 ("Plaintiffs' Motion").) Defendants' Motion is due to be granted and Plaintiffs' Motion denied.

## BACKGROUND

In this First Amendment case, Plaintiff Moms for Liberty ("M4L") is a nonprofit organization that advocates for parental rights. (Doc. 91-2, p. 7:6–14.) Plaintiffs Amy Kneessy, Ashley Hall, Katie Delaney, and Joseph Cholewa are current and former members of M4L. (*Id.*; Doc. 91-3, p. 9:9–22; Doc. 91-4, p. 10:5–23; Doc. 91-5, p. 9:12–17.) The school board for Defendant Brevard Public Schools ("Board") holds regular meetings, for which it has a policy for public participation

("Policy"). (Doc. 20, ¶¶ 1, 4 & Ex. 2, pp. 117–18.) The Policy requires all statements at Board meetings to be directed to the Board's chair, Defendant Misty Haggard-Belford ("Chair"), not individual Board members. (*Id.* at 118.) It also provides that the Chair may "interrupt, warn, or terminate a participant's statement when the statement is too lengthy, personally directed, abusive, obscene, or irrelevant" and "request any individual to leave the meeting when that person does not observe reasonable decorum." (*Id.*)

Between January and October 2021 ("Relevant Period"), the Chair enforced the Policy against M4L members four times. (Doc. 20, ¶¶ 227, 229–231; Doc. 78, ¶¶ 19, 30–31, 34–38.) On February 23, 2021, the Chair interrupted Hall for trying to thank an individual Board member but allowed her to continue her comments following the interruption. (Doc. 20, ¶¶ 50–52.) This is the only interruption Hall experienced during the Relevant Period; she spoke at twelve other meetings most of which were after the single interruption. (*Id.* ¶ 30.) On May 21, 2021, the Chair interrupted Cholewa for directing his criticisms to a Board member but permitted him to finish his statement. (*Id.* ¶¶ 119–23.) The Chair also interrupted Cholewa at the September 5, 2021 meeting for discussing abortion and gender in inflammatory terms and an abusive manner. (*Id.* ¶¶ 190–96.) After the Chair interrupted Cholewa multiple times for failing to comply, she asked him to leave for causing disruption to the meeting. (*Id.*) Cholewa spoke uninterrupted at two later meetings

2

during the Relevant Period. (*Id.* ¶¶ 36, 229.) At the October 26, 2021 meeting, the Chair interrupted another M4L member (who is not a Plaintiff) when she read from a book purportedly available in a school library. (*Id.* ¶ 219.) The Chair interrupted the speaker for using obscenity and asked her to "keep it clean." (*Id.*) Delaney spoke uninterrupted at thirteen Board meetings during the Relevant Period; the remaining Plaintiff Kneessy did not speak at any. (*Id.* ¶¶ 33–35, 40.) In total, M4L members spoke uninterrupted over 100 times during the Relevant Period and participated in public comment at each meeting. (*Id.* ¶¶ 41–43, 45–49, 53–54, 64, 68, 71, 79–82, 85, 87–89, 93–95, 99–102, 114–15, 117–18, 125–33, 143–46, 152–56, 159, 161, 164, 167, 170–75, 179–90, 198–200, 202, 204–06, 208–09, 211–13, 215–16, 218, 223–24, 231.) The Chair has also enforced the Policy against non-M4L members who expressed both opposition to and support for the Board. (*Id.* ¶¶ 60–63, 65, 69, 73–78, 83–84, 106–08, 116, 157–58, 160, 162, 191, 221.)

The next month, Plaintiffs sued the Board and the Chair under 42 U.S.C. § 1983, alleging that the Policy violates their free speech and petition rights. (Doc. 78.) Early in the litigation, Plaintiffs moved for a preliminary injunction, which the Court denied, holding that they were unlikely to succeed on the merits. (Docs. 3, 46.) Plaintiffs then appealed, and the U.S. Court of Appeals for the Eleventh Circuit affirmed this Court's denial. (Docs. 47, 99.) The Court also dismissed with prejudice Plaintiffs' facial challenges to the Policy, finding that the Policy is both

content- and viewpoint-neutral . (Doc. 63.) All that remains are Plaintiffs' claims that the Policy is unconstitutional as applied. (*See* Doc. 78, ¶¶ 46–63.)

Both parties now move for summary judgment. (Docs. 90, 91.) With briefing complete, the matter is ripe. (Docs. 95–98.)

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering cross-motions for summary judgment, the Court views the facts "in the light most favorable to the non-moving party on each motion." *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). The Court must then decide whether there is "sufficient disagreement to require submission to a jury." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (cleaned up).

## ANALYSIS

The parties raise two key issues: (1) the chilling effect of the Policy's application as it relates to standing; and (2) whether application of the Policy is viewpoint-neutral.[1] (*See* Doc. 90, pp. 17–25; Doc. 91, pp. 11–25.) The Court

---

[1] Plaintiffs bring claims for violating both their free speech and petition rights. The same analysis is applied to both. (Doc. 91, pp. 24–25); *see Wayte v. United States*, 470 U.S. 598, 610 n.11 (1985) ("Although the right to petition and the right to free speech are separate guarantees, they are related and generally subject to the same constitutional analysis.").

addresses each in turn.

### I. Standing

First, Defendants argue that Plaintiffs lack standing because the Policy has no chilling effect on their speech. (Doc. 90, pp. 22–25.) The Court agrees.

Article III standing requires an injury in fact that is "actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In the context of the First Amendment, courts must look to "whether the challenged policy objectively chills protected expression." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022) (cleaned up). Objective chill occurs where "operation or enforcement[] of the government policy would cause a reasonable would-be speaker to self-censor." *Id.* (cleaned up).

Plaintiffs argue that the Chair's custom of reading a criminal statute that penalizes disruptions before Board meetings and that her use of the Policy to interrupt and eject speakers chills their speech. (Doc. 91, pp. 19–20.) But M4L members, including Hall, Delaney, and Cholewa, have regularly continued to speak at meetings—demonstrating that actual enforcement of the Policy has not chilled the exercise of their right to speak. (Doc. 20, ¶¶ 30, 33–36); *see Speech First*, 32 F.4th at 1120.  Plaintiffs counter that even if they continue to speak, they self-censor. (Doc. 96, p. 13.) But the only specific alterations to their comments that

Plaintiffs identify is choosing not to address Board members by name.[2] (Doc. 91-2, pp. 18:23–9:9; Doc. 91-5, pp. 25:17–27:23.) And the only consequences the Policy provides for personally directed comments is interruption by the Chair. (Doc. 20, Ex. 2, p. 118.) The record demonstrates that the Chair's interruptions of Plaintiffs, and others, for personally directed comments were regularly brief and respectful, and Plaintiffs freely finished speaking. (*See, e.g.*, Doc. 20, ¶¶ 50–52, 60–63, 65, 74–78, 83–84, 106–08, 119–23, 157–58, 160, 162, 219, 221; Doc. 21, pp. 4–5.) Such light enforcement of the Policy, with very minimal consequences, would not cause a reasonable speaker to self-censor. *See Charnley v. Town of S. Palm Beach*, No. 13-81203, 2015 WL 12999749, at *8 (S.D. Fla. Mar. 23, 2015), *adopted*, 2015 WL 12999750 (S.D. Fla. Apr. 9, 2015), *aff'd*, 649 F. App'x 874 (11th Cir. 2016). So Plaintiffs have not experienced the objective chill necessary to establish standing, entitling Defendants to summary judgment.[3] *See Speech First*, 32 F.4th at 1120.

## II. Viewpoint-Neutral Application

---

[2] Hall also testified that she refrained from speaking about school library books, but she never actually attempted to do so. (Doc. 91-2, p. 19:5–9.) And any hesitance, even if it existed, is not reasonable given only a single instance in which a M4L member was interrupted while reading from a book—because she used an expletive. (Doc. 20, ¶ 119); *see Speech First*, 32 F.4th at 1120.

[3] Plaintiffs argue that the Policy's imprecision exacerbates its chilling effect. (Doc. 91, pp. 20–22.) But the cases Plaintiffs cite in support of this argument involve facial challenges; they provide no authority for the notion that a facially constitutional policy can chill speech as applied. *Cf. Speech First*, 32 F.4th at 1110; *Burns v. Town of Palm Beach*, 999 F.3d 1317 (11th Cir. 2021); *Fla. Cannabis Action Network, Inc. v. City of Jacksonville*, 130 F. Supp. 2d 1358 (M.D. Fla. 2001)). As the Court has already dismissed Plaintiffs' facial challenges, this argument is not well-taken. (Doc. 46, pp. 4–10; Doc. 63, p. 8.)

Even if Plaintiffs had standing to bring their as-applied claims, they still would not be entitled to summary judgment because the Policy is viewpoint-neutral as applied. To determine viewpoint-neutrality, courts look to: (1) whether the speech was protected; (2) the nature of the forum; and (3) whether the restriction satisfies the required standard for that forum. *See Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985); *Dyer v. Atlanta Indep. Sch. Sys.*, 852 F. App'x 397, 401 (11th Cir. 2021).

As a threshold matter, Plaintiffs argue that "abusive" and "personally directed" speech are protected. (Doc. 91, pp. 13–18.) This is mostly[4] true: unprotected speech includes obscenity, defamation, fraud, incitement, and speech integral to criminal conduct, but courts are hesitant "to declare new categories of speech outside the scope of the First Amendment." *United States v. Stevens*, 559 U.S. 460, 468–69, 472 (2010). Here, M4L members' "personally directed," "abusive," and "irrelevant" speech may violate the Policy, but that does not mean they fall within the traditional categories of unprotected speech. (Doc. 20, ¶¶ 50–52, 119–23, 193–96, 219 & Ex. 2, pp. 117); *Stevens*, 559 U.S. at 468–69. Just because the Policy

---

[4] There is one instance where an M4L member was interrupted for violating the Policy's prohibition on obscenity because she used an expletive while reading from a book that was allegedly from a school library. (Doc. 20, ¶ 119.) It is true that obscenity is not a protected category, but Plaintiffs argue that the member's usage does not rise to the level defined by the Supreme Court. (Doc. 91, pp. 18–19 (citing *Miller v. California*, 413 U.S. 15, 24 (1973)).) But the Court need not engage in this analysis, because if the speech is protected it is still subject to the constitutional restrictions of the Policy, which prohibits obscene speech. (*See* Doc. 46, pp. 4–10; Doc. 63, p. 8; Doc. 120, Ex. 2, p. 118.)

7

is constitutional does not turn any violation of it into unprotected speech. *See Dyer*, 852 F. App'x at 401. The true question is whether and how much this protected speech can be restricted based on the nature of the forum.

It is undisputed that the public comment portions of Board meetings are a limited public forum. (*See* Doc. 91, p. 11; Doc. 95, p. 6); *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir. 2017). Even in this limited forum, Plaintiffs nevertheless argue that Defendants' application of the Policy's prohibition on "personally directed," "abusive," and "obscene" speech is unconstitutional because it is used to discriminate against them based on their viewpoints. (Doc. 91, p. 12.) Defendants counter that the Policy is not viewpoint-discriminatory because it is applied evenhandedly.[5] (Doc. 90, pp. 17–20.)

"Viewpoint discrimination is [] an egregious form of content discrimination . . . [that occurs] when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector*

---

[5] Plaintiffs' argument that evenhanded application is irrelevant misses the mark. (Doc. 91, pp. 22–23.) Plaintiffs conflate the separate but related concepts of viewpoint- and content-discrimination. *See Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115, 1124 (M.D. Fla. 2019). In fact, one of the cases cited by Plaintiffs illustrates this point: "For example, if a state banned all speech about the big election, that would be content discrimination; but if a state banned all negative comments about Politician Doe, that would be invidious viewpoint discrimination. While the former may be allowed in a limited public forum, the latter typically isn't." *Jenner v. Sch. Bd. of Lee Cnty.*, No. 2:22-cv-85, 2022 WL 1747522, at *6 (M.D. Fla. May 31, 2022). Here, the Court already found the Policy's restriction on "personally directed, abusive, obscene, or irrelevant" comments to be content-neutral. (Doc. 63, p. 8.) The remaining question is whether the Board applies the Policy to effectively ban negative comments or opposing viewpoints. *See Jenner*, 2022 WL 1747522, at *6. So evenhanded application is the relevant analysis. *See Cleveland v. City of Cocoa Beach*, 221 F. App'x 875, 878–79 (11th Cir. 2007).

*& Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). A restriction is viewpoint-neutral and thus permitted in this limited forum if it is evenhandedly applied no matter the specific message being advocated. *See Cleveland v. City of Cocoa Beach*, 221 F. App'x 875, 878–79 (11th Cir. 2007).

Here, there are four instances during the Relevant Period when the Chair interrupted M4L members for violating the Policy. (Doc. 20, ¶¶ 50–52, 119–23, 190–96, 219.) Those four instances were out of over 100 times in the Relevant Period in which M4L members spoke. (*Id.* ¶ 231.) When M4L members, and non-members, expressed opposition to the Board and spoke within the confines of the Policy, they did so uninterrupted. (*Id.* ¶¶ 41–43, 45–49, 53–54, 64, 66–68, 71, 79–82, 85, 87–95, 99–102, 109, 114–15, 117–18, 124–46, 151–56, 159, 161–64, 167–75, 177–90, 192, 197–200, 202, 204–06, 208–16, 218, 222–24, 231.) Further, when non-members violated the Policy, including when making supportive comments or comments purportedly aligned with the views of the Board, they were interrupted just as M4L members were. (*Id.* ¶¶ 60–63, 65, 69, 73–78, 83–84, 106–08, 116, 157–58, 160, 162, 191, 221.) Sothe record demonstrates there is no genuine dispute that the Policy was evenhandedly applied and thus viewpoint-neutral.[6] *See Cleveland*,

---

[6] Plaintiffs may point to a few instances when the Chair strayed from evenhanded application, but "[a]n erroneous judgment call on the part of a presiding officer does not automatically give rise to liability for a constitutional tort." *See Jones*, 888 F.2d at 1334.

221 F. App'x at 878–79. So Defendants are entitled to summary judgment.[7] *See Rosenberger*, 515 U.S. at 829.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion (Doc. 90) is **GRANTED**.

2. Plaintiffs' Motion (Doc. 91) is **DENIED**.

3. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiffs, terminate all pending deadlines and motions, and close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 13, 2023.



ROY B. DALTON JR.
United States District Judge

---

[7] Plaintiffs agree that Defendants have a "significant interest in conducting orderly, efficient meetings," but they contend that Defendants may only regulate *conduct* to maintain decorum—not *speech*. (Doc. 91, pp. 23–24.) Plaintiffs are incorrect. *See Dyer*, 852 F. App'x at 402 ("[P]olicies outlining how someone may speak at a community meeting, prohibiting disruption, and requiring decorum are content-neutral policies.").