UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MOMS FOR LIBERTY – BREVARD COUNTY, FL, et. al,<br><br>*Plaintiffs*,<br><br>v.<br><br>BREVARD PUBLIC SCHOOLS, et. al,<br><br>*Defendants*. | Case No. 6:21-cv-1849-RBD-RMN<br><br>PLAINTIFS' TIME-SENSITIVE MOTION FOR A TEMPORARY RESTRAINING ORDER |

Pursuant to Fed. R. Civ. P. 65, Plaintiffs move for a temporary restraining order prohibiting Defendants, including Brevard Public Schools, its board members, officers, agents, employees, and anyone else receiving notice of the restraining order, from enforcing Brevard Public Schools' policies that prohibit "abusive" speech and "personally directed" comments, and enforcing the policy against "obscene" speech as applied to speakers reading from school library books. The Eleventh Circuit held that these policies are unconstitutional, but Defendants will not agree to stop enforcing them. Plaintiffs thus request a temporary restraining order to prevent Defendants from violating Plaintiffs' First Amendment rights at Defendants' next board meeting on **Tuesday, January 21, 2025**.[1]

---

[1] Plaintiffs intend to seek either a preliminary injunction or permanent injunction soon, once the parties have finished conferring over the appropriate next steps in

-1-

The undersigned certifies that Plaintiffs informed Defendants on January 16, 2025, that they intended to file this motion, Nolan Decl. ¶6; Exh. 1, and that Defendants will receive actual notice of the motion when it is automatically served via CM/ECF upon filing.

## STATEMENT OF FACTS

On October 8, 2024, the Eleventh Circuit issued its decision in this case and held that all three of the Brevard Public Schools policies challenged in this case violate the First Amendment. *Moms for Liberty v. Brevard Pub. Sch.*, 118 F.4th 1324, 1335 (11th Cir. 2024) (ban on "abusive" speech is facially unconstitutional); *id.* at 1337–38 (ban on "personally directed" speech is facially unconstitutional); *id.* at 1338–39 (ban on "obscene" speech is unconstitutional as applied to reading from school library books).[2]

Notwithstanding this ruling, at the Board's meetings on November 19, 2024, and December 10, 2024 meeting, Defendant Board Chair Gene Trotter informed speakers that they were governed by the unconstitutional policies. *See* 11-20-2025 Meeting at 1:13:00,

---

this case. (Doc. No. 134, 135). But because the Board's next meeting is only days away, temporary emergency relief is necessary.

[2] The specific policies at issue are Brevard Sch. Bd. Policy Manual § 0000 Bylaws, Code po0169.1, which prohibit "abusive" speech, "personally directed" comments, and "obscene" speech. *See* Exh. 4. As to the latter, the Eleventh Circuit held it is unconstitutional as applied to speakers reading from school library books. (Doc. No. 131 at 26).

https://www.youtube.com/watch?v=c2l4q0GYfBg; 12-10-2024 Meeting at 1:04:30, https://www.youtube.com/live/Wbxvffv_POI.

The Eleventh Circuit denied rehearing *en banc* and issued its mandate on December 16, 2024. (Doc. 132). This Court then reopened the case and asked for a status update from the parties detailing their position on how this case should proceed. (Doc. 133). The parties filed a joint notice on December 20, 2024, explaining that Defendants intended to meet with their counsel in early January and would be able to discuss next steps following that meeting. (Doc. 134 ¶2).

On January 6, 2025, Plaintiffs' counsel reached out to Defendants' counsel to confirm that Defendants would no longer be enforcing the challenged policies while the parties discuss the next steps, given that the Eleventh Circuit has held that the policies violate the First Amendment. Exh. 2.

The parties then conferred by telephone on January 10, 2025. While that conversation suggested there might be some agreement on the path forward for this case, Defendants' counsel would not confirm that his clients would cease enforcing the unconstitutional policies. Instead, Defendants' counsel suggested that Defendants would first need to formally adopt a new policy, a process that could take some time. Plaintiffs' position remained that Defendants must immediately cease enforcing the unconstitutional policy. In

any event, it seemed that an agreement on a permanent injunction would soon moot the dispute. Gura Decl., ¶4.

Plaintiffs' counsel emailed Defendants' counsel a written proposal for next steps on January 14, 2025. Nolan Decl. ¶¶2–3; Exh. 3. Two days later, Plaintiff Amy Kneessy spoke to the Brevard Public School Chair, Gene Trent, about the upcoming board meeting on January 21, 2025—which at the time was only 5 days away. Kneessy Decl. ¶6. She asked whether the board would continue enforcing the unconstitutional policies and what would happen if she or others violated them. *Id.* The Board Chair would not guarantee that he would not enforce the policies, and he said that they believe the board can continue enforcing the old policies until it adopts new ones. *Id.*

Ms. Kneessy intends to speak at the Board meeting on January 21 to make comments about individual staff members and the programs they administer. Kneessy Decl. ¶3. Her comments will violate the challenged policies, and so—consistent with her prior self-censorship, (Doc. No. 131 at 9), she will not speak unless she knows that the Board will not enforce them, Kneessy Decl. ¶¶3, 5–7.

After learning this information, Plaintiffs' counsel again emailed Defendants' counsel about the Board continuing to enforce its illegal policies. Nolan Decl. ¶6; Exh. 1. At this point, it had been 10 days since Plaintiffs' counsel first asked Defendants' counsel to confirm that their clients would

stop enforcement, but Defendants' counsel refused to answer one way or the other. Plaintiffs' counsel again asked Defendants' counsel to confirm in writing that they will not enforce the unconstitutional policies at their next board meeting. Plaintiffs' counsel also explained that if Defendants would not do so, Plaintiffs would be forced to seek a temporary restraining order the following day, on January 17, 2025.

Defendants' counsel responded the next day and stated that they expected to talk to their clients that day about the temporary restraining order. Nolan Decl. ¶7. Defendants' counsel did not state when they expected that conversation to occur. *Id.* As of this filing, Defendants have still not confirmed whether they intend to enforce the illegal policies at the Board meeting on Tuesday, January 21, 2025.

## LEGAL MEMORANDUM

The Eleventh Circuit held that the Board's speaking policies violate the First Amendment. Yet Defendants refuse to stop enforcing those policies voluntarily. The Court should enter a temporary restraining order because Plaintiffs will otherwise suffer immediate and irreparable injury at the next board meeting on January 21, 2025, and it's unclear that the Board "can be heard in opposition" before then. Fed. R. Civ. P. 65(b).

I. PLAINTIFFS WILL ULTIMATELY PREVAIL ON THE MERITS BECAUSE THE ELEVENTH CIRCUIT ALREADY HELD THAT THE CHALLENGED POLICIES ARE UNCONSTITUTIONAL.

The Eleventh Circuit held that the Brevard Public School policies challenged in this case violate the First Amendment. *Moms for Liberty*, 118 F.4th at 1335 (ban on "abusive" speech is facially unconstitutional); *id.* at 1337–38 (ban on "personally directed" speech is facially unconstitutional); *id.* at 1338–39 (ban on "obscene" speech is unconstitutional as applied to reading from school library books). Thus, Plaintiffs will succeed—or in fact, have already succeeded—on the merits of their claims.

II. APPLYING UNCONSTITUTIONAL SPEAKING POLICIES AT A SCHOOL BOARD MEETING IMPOSES IRREPARABLE HARM, AND DEFENDANTS MAY NOT BE ABLE TO RESPOND TO THIS MOTION BEFORE ITS MEETING ON JANUARY 21.

The harm is irreparable because Plaintiffs face the threat of a First Amendment injury to their "right to speak at future meetings." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017). An ongoing threat to "chill[] or prevent[]" a plaintiff's "pure speech" is presumptively irreparable. *Id.* As the Eleventh Circuit explained, the Board's policies here "objectively chills expression." *Moms for Liberty*, 118 F.4th at 1331. And Ms. Kneessy in particular intends to speak at the meeting on January 21, 2025, violating the Board's speech code, but will not do so if the Board continues enforcing the challenged policies. Kneessy Decl. ¶¶ 3, 5–7. This chilling effect

is "irreparable harm" for which "remedies at law [are] inadequate." *Barrett*, 872 F.3d at 1229.

Defendants have already ignored the Eleventh Circuit's opinion at their November 19 and December 10 meetings. Plaintiffs notified Defendants (through counsel) on January 16, 2025, that they intend to move for a temporary restraining order if Defendants would not confirm in writing that they will not enforce the illegal policies at their next board meeting. Nolan Decl. ¶6; Exh. 1. At that point, it had been 10 days since Plaintiffs made a similar request, but Defendants had not responded one way or the other about whether they intended to continue enforcement. *See* Gura Decl. ¶¶2, 4; Exh. 2.

Defendants' counsel responded to the undersigned's email the next day—January 17, 2025. While she stated that they expected to speak to their clients sometime that day, she did not indicate when that meeting may happen or when Plaintiffs could expect to hear a response. Nolan Decl. ¶7. Eleven days had passed since Plaintiffs first asked Defendants to confirm they would stop enforcing the unconstitutional policies. Yet at the time of this filing, Plaintiffs have not heard back from Defendants about their position.

Plaintiffs have thus made every effort to determine whether Defendants intend to continue acting unlawfully, but Plaintiffs have received no response on that question. Because the next board meeting is only four days away,

Plaintiffs need a restraining order before Defendants' response to any motion would ordinarily be due. *See* Local Rule 3.01(c).[3]

### III. PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF DEFENDANTS ARE NOT ENJOINED BEFORE THE BOARD MEETING ON JANUARY 21.

Ms. Kneessy intends to speak at the meeting on January 21, and her comments will violate the Board's policies because she intends to criticize individual staff members and the programs they administer. Kneessy Decl. ¶3. But Ms. Kneessy will refrain from speaking—as she has done for years—if the Board intends to enforce the challenged policies. *Id.* at ¶¶5–7.

As the Eleventh Circuit held, it is "borderline frivolous" to dispute that this self-censorship is not an injury. *Moms for Liberty*, 872 F.4th at 1330. "Several members [of Moms for Liberty] who are individual plaintiffs have credibly alleged that they have already self-censored their speech at Brevard County School Board meetings because of the Board's policies, and that a reasonable person in their shoes would have done the same." *Id.* The Court of Appeals specifically addressed Ms. Kneessy's self-censorship, stating it has "no trouble concluding that the operation of the Board's policies governing participation in the public comment portions of their meetings objectively chills expression." *Id.* at 1331. This chill constitutes irreparable harm,

---

[3] Defendants will receive actual notice of this motion through CM/ECF.

*Barrett*, 872 F.3d at 1229, which Ms. Kneessy and other speakers will suffer "absent a restraining order," Local Rule 6.01(b)(3).

IV. AN INJUNCTION SERVES THE PUBLIC INTEREST AND OUTWEIGHS ANY HARM TO OTHERS.

"[T]he public interest is always served in promoting First Amendment values." *SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001). To this end, an injunction preventing a school board from enforcing unconstitutional speaking policies at its meetings "does not disserve the public interest." *Barrett*, 872 F.3d at 1230.

"As for weighing the balance of hardships" between the parties, that too favors an injunction. *Id.* at 1229. The Board may argue that it needs to continue enforcing these policies until it has time to change them. Given that the Eleventh Circuit issued its decision more than three months ago, the Board has had plenty of time to get its ducks in a row. Still, it would not matter. The Eleventh Circuit has held that a "Board's need to redraft one part of [its policy] . . . hardly compare[s] to the deprivation of [the plaintiff's] and all other potential speakers' constitutional right to engage in free speech." *Id.* at 1229–30.

V. THE COURT SHOULD WAIVE RULE 65(C)'S SECURITY REQUIREMENT.

The Court has discretion to waive Rule 65(c)'s security requirement. *Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D.

Fla. 2009), *report and recommendation adopted by* 607 F. Supp. 2d 1326, 1329 (M.D. Fla. 2009) ("The security requirement in Rule 65(c) is waived."). "Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right." *Id.* (collecting cases). "In determining whether to waive bond, the court should consider: (1) the possible loss to the enjoined party, (2) the hardship that a [bond] would impose upon the applicant, and (3) the impact of a bond on the enforcement of federal rights." *All States Humane Game Fowl Org., Inc. v. City of Jacksonville*, Case No. 3:08-cv-312, 2008 U.S. Dist. LEXIS 60760, at *45 (M.D. Fla. July 29, 2008).

All three factors favor waiving the security requirement here. First, Defendants face no possible loss from a temporary restraining order. Enjoining the challenged policies will not risk subjecting Brevard Public Schools to any monetary damage. *See Johnston v. Tampa Sports Auth.*, Case No. 8:05-cv-1291, 2006 U.S. Dist. LEXIS 77614, at *3–4 (M.D. Fla. Oct. 13, 2006). But "imposing a financial burden on a plaintiff as a condition to protecting fundamental constitutional rights would create an unfair hardship on that plaintiff." *Id.* at *3. Needless to say, requiring a plaintiff to post security for simply exercising her constitutional rights *after* the Eleventh Circuit has determined that the speaking policies violate the First Amendment would severely "impact . . . the enforcement of federal rights."

*All States Humane Game Fowl Org.*, 2008 U.S. Dist. LEXIS, at *45. The Court should thus waive Rule 65(c)'s security requirement.

Dated: January 17, 2025

Respectfully submitted,

/s/ Brett R. Nolan

David Osborne
GOLDSTEIN LAW PARTNERS, LLC
4651 Salisbury Rd., Suite 400
Jacksonville, FL  32256
610-949-0444
dosborne@goldsteinlp.com

Brett R. Nolan (*pro hac vice*)*
Ryan Morrison (*pro hac vice*)
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW, Suite 801
Washington, DC  20036
202-301-3300
bnolan@ifs.org
rmorrison@ifs.org
**Lead counsel for Plaintiffs*

*Attorneys for Plaintiffs*

LOCAL RULE 3.01(G) CERTIFICATION

Plaintiffs' counsel conferred by telephone and email with Defendants' counsel, as described above and in the undersigned's declaration and Exhibit 1, but the parties have been unable to reach an agreement on the resolution of this time-sensitive motion. Plaintiffs' counsel will supplement the motion with a statement certifying the parties have resolved all or part of the motion should circumstances change.

/s/ Brett R. Nolan

*Lead Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

On January 17, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

/s/ Brett R. Nolan

*Lead Counsel for Plaintiffs*